# United States Court of Appeals

*for the*

# Third Circuit

---

Case No. 24-1817

---

LANDBRIDGE PORT SERVICES (HONG KONG) LTD.,

*Plaintiff-Appellee,*

– v. –

NOTARC PORT INVESTMENT LLC, et al.,

*Defendants-Appellants.*

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE IN CASE NO. 1:24-CV-00397,
GREGORY B. WILLIAMS, DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLEE

MICHAEL A. BARLOW
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com

DAVID M. ORTA
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
davidorta@quinnemanuel.com

DAVID M. COOPER
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000
davidcooper@quinnemanuel.com

ARIAN J. KOOCHESFAHANI
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
ariankoochesfahani@quinnemanuel.com

*Attorneys for Plaintiff-Appellee*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellee Landbridge Port Services (Hong Kong) Ltd. restates the information provided in its disclosure statement. Dkt. 7. Specifically, Appellee is a wholly owned subsidiary of Shandong Landbridge Group Co., Ltd., which is a privately-held corporation. Landbridge International Co., Ltd., a privately-held corporation, and Ms. Fang Ye, respectively, own 93.89% and 6.11% of the stock of Shandong Landbridge Group Co., Ltd., respectively. Landbridge International Co., Ltd. is owned 93.89% by Mr. Cheng Ye and 6.11% by Ms. Fang Ye.


Dated: May 16, 2025     *s/ David M. Cooper*
           David M. Cooper

           *Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES ................................................................. iv

PRELIMINARY STATEMENT .................................................................1

JURISDICTIONAL STATEMENT .............................................................3

STATEMENT OF ISSUES.................................................................3

STATEMENT OF RELATED CASES AND PROCEEDINGS.............................4

STATEMENT OF THE CASE ................................................................4

    A.    Factual Background .........................................................4

          1.    Appellants And Their Co-Defendants Steal Landbridge's Rights To Develop The Panama Port Project ...........................4

          2.    Appellants And Their Co-Defendants Facilitate The Illegitimate Notarc Transaction And Share Subscription Agreement ...........................................................6

          3.    Appellants Benefit From The Scheme, Leading To Landbridge's Discovery Of The Theft Of The Projects............8

          4.    Appellants Institute A Sham Arbitration Under The Share Subscription Agreement.......................................10

          5.    Landbridge's Underlying Complaint Before the Court of Chancery...............................................................11

    B.    Proceedings Below .......................................................12

    C.    The District Court's Remand Order ................................13

SUMMARY OF ARGUMENT................................................................15

STANDARD OF REVIEW ................................................................16

ARGUMENT................................................................................17

I.    THE COURT LACKS APPELLATE JURISDICTION .............................17

    A.    Section 1447(d) Bars Review Of Remand Orders Based On Lack Of Subject-Matter Jurisdiction ..................................17

    B.    The Collateral Order Doctrine Does Not Apply ................21

II.    THE MOTION TO COMPEL ARBITRATION IS MERITLESS..............23

A.    Appellants' Arbitration Agreement Does Not Apply Here ................24

    1.    The Arbitration Agreement Does Not Cover This Action Because It Excludes Landbridge ............................................24

        (a)    The Scope Of The Arbitration Agreement Is For The Courts To Decide ...................................................24

        (b)    The Arbitration Provision Does Not Cover A Dispute With A Non-Party To The Arbitration Agreement ....................................................................26

    2.    The Arbitration Agreement Does Not Bind Landbridge ..........28

        (a)    Landbridge Is Not Equitably Estopped Because The Arbitration Agreement Harms Landbridge .............28

    3.    Landbridge's Claims Do Not Belong To LHI ........................32

B.    Appellants' Policy Arguments Fail ...................................................37

CONCLUSION .................................................................................................38

CERTIFICATE OF ADMISSION TO BAR .......................................................40

CERTIFICATE OF SERVICE ...........................................................................41

CERTIFICATE OF COMPLIANCE...................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Piper Aircraft Corp.*,
 729 F.3d 350 (3d Cir. 2013)................................................................19

*Archer & White Sales, Inc.*,
 935 F.3d 274 (5th Cir. 2019)..............................................................25

*Atlantic Ship Rigging Co. v. McLellan*,
 288 F.2d 589 (3d Cir. 1961)...............................................................21

*Bank of New York Mellon Tr. Co., N.A. v. Cresci*,
 2018 WL 11211439 (3d Cir. Oct. 26, 2018).......................................18

*Beiser v. Weyler*,
 284 F.3d 665 (5th Cir. 2002)..............................................................23

*Berkelhammer v. ADP TotalSource Grp., Inc.*,
 74 F.4th 115 (3d Cir. 2023).........................................................32, 33

*CardioNet, Inc. v. Cigna Health Corp.*,
 751 F.3d 165 (3d Cir. 2014)..........................................................24, 26

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
 556 U.S. 635 (2009)............................................................................17

*Citigroup Inc. v. AHW Inv. P'ship*,
 140 A.3d 1125 (Del. 2016) ..........................................................32, 33

*City of Waco, Tex. v. U.S. Fid. & Guar. Co.*,
 293 U.S. 140 (1934)............................................................................22

*Dahiya v. Talmidge Int'l, Ltd.*,
 371 F.3d 207 (5th Cir. 2004)........................................................20, 21

*Doyle v. U.S. Sec'y of Lab.*,
 285 F.3d 243 (3d Cir. 2002)..........................................................27, 28

*E.E.O.C. v. Waffle House, Inc.*,
 534 U.S. 279 (2002)............................................................................28

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001) ..................................................... 29, 30

*Field Intel. Inc. v. Xylem Dewatering Solutions Inc.*,
49 F.4th 351 (3d Cir. 2022) .............................................................. 25

*Flintkote Co. v. Aviva PLC*,
769 F.3d 215 (3d Cir. 2014) ............................................................. 31

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ......................................................................... 26

*Greenwood v. Raznick*,
326 F. App'x 362 (6th Cir. 2009) ................................................... 32

*Griswold v. Coventry First LLC*,
762 F.3d 264 (3d Cir. 2014) ............................................... 28, 30, 31

*Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*,
72 F.4th 499 (3d Cir. 2023) .............................................................. 20

*Intertec Contracting A/S v. Turner Steiner Int'l, S.A.*,
6 F. App'x 61 (2d Cir. 2001) ........................................................... 20

*Invista S.A.R.L. v. Rhodia, S.A.*,
625 F.3d 75 (3d Cir. 2010) .............................................................. 29

*Jack v. S. Park Ventures, LLC*,
2018 WL 1158370 (S.D. Ohio Mar. 5, 2018) ................................. 36

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
926 F.2d 1406 (3d Cir. 1991) .......................................................... 23

*Levin v. Lillien*,
511 F. App'x 149 (3d Cir. 2013) ..................................................... 22

*McPheeters v. McGinn, Smith & Co.*,
953 F.2d 771 (2d Cir. 1992) ............................................................ 26

*Medtronic AVE Inc. v. Cordis Corp.*,
100 F. App'x 865 (3d Cir. 2004) ..................................................... 27

*Minard Run Oil Co. v. U.S. Forest Serv.*,
670 F.3d 236 (3d Cir. 2011) ........................................................... 37

*Montanez v. Thompson*,
603 F.3d 243 (3d Cir. 2010) ........................................................... 16

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*,
974 F.3d 386 (3d Cir. 2020) ................................................... 17, 24

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
118 A.3d 175 (Del. 2015) ............................................................... 33

*NASDAQ OMX Group, Inc. v. UBS Securities, LLC*,
770 F.3d 1010 (2d Cir. 2014) ......................................................... 25

*New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld*,
604 F.3d 816 (3d Cir. 2010) ........................................................... 21

*Papotto v. Hartford Life & Acc. Ins. Co.*,
731 F.3d 265 (3d Cir. 2013) ................................................... 21, 22

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007) ......................................................................... 17

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945) ......................................................................... 32

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) ........................................................................... 24

*Sarah Car Care, Inc. v. LogistiCare Sols., LLC*,
2023 WL 5378845 (3d Cir. Aug. 22, 2023) ................................... 20

*Scheiber v. Dolby Lab'ys, Inc.*,
293 F.3d 1014 (7th Cir. 2002) ....................................................... 32

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*,
621 F.3d 981 (9th Cir. 2010) ......................................................... 32

*Setty v. Shrinivas Sugandhalaya, LLP*,
3 F.4th 1166 (9th Cir. 2021) ......................................................... 29

*Snyder v. Comm'r of Internal Revenue*,
73 F.2d 5 (3d Cir. 1934) ................................................................... 36

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
64 F.3d 773 (2d Cir. 1995) .......................................................... 30, 31

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ......................................................... 33, 34

*Totalenergies Renewables USA, LLC v. Trina Solar (U.S.), Inc.*,
2023 WL 8821328 (9th Cir. Dec. 21, 2023) ............................... 19, 21

*Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*,
119 F.3d 619 (8th Cir. 1997) .............................................................. 21

*United States v. Maury*,
695 F.3d 227 (3d Cir. 2012) .............................................................. 34

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) .............................................................. 27

*Walsh v. Schlecht*,
429 U.S. 401 (1977) ........................................................................... 28

*Williams v. BASF Catalysts LLC*,
765 F.3d 306 (3d Cir. 2014) .............................................................. 33

*Wu v. Liu*,
131 F.4th 1295 (11th Cir. 2025) .............................. 19, 20, 21, 22

*Young v. Experian Info. Sols., Inc.*,
119 F.4th 314 (3d Cir. 2024) ............................................................. 16

## Statutes

9 U.S.C. § 16(a)(1)(c) ........................................................................ 18

9 U.S.C. § 205 ................................................................................... 18

28 U.S.C. § 1447(d) ............................................... 2, 3, 15, 17, 19, 20, 21

## PRELIMINARY STATEMENT

Plaintiff-Appellee Landbridge Port Services (Hong Kong) Ltd. ("Landbridge") sued Appellants in Delaware state court seeking equitable relief to unravel a years-long scheme whereby Appellants and their co-conspirators stole Landbridge's property interests—including a Barbadian company, various Panamanian companies, and a highly valuable Panamanian concession contract— in a port project situated at the Atlantic entrance to the Panama Canal. To avoid critical review by appropriate courts, Appellants and co-defendants conspired to have Landbridge's claims decided in a one-sided Panamanian arbitration stemming from an arbitration agreement to which Landbridge is not a party, and that Appellant conspirators drafted and signed as part of their fraud scheme without Landbridge's knowledge or consent. Appellants and co-defendants initiated the arbitration between themselves, feigning adversity to reach a preordained result— legal recognition of their ill-gotten gains.

This appeal concerns Appellants' improper attempts to obstruct Landbridge's state-court claims while the sham arbitration proceeds, by baselessly and repeatedly removing the action to federal court. Appellants did so by arguing this dispute belongs in international arbitration—the sham arbitration specifically. Both times, the federal district court rejected that argument and remanded to state court for lack of subject-matter jurisdiction. The second time, it deemed

Appellants' claim that Landbridge must arbitrate this dispute so meritless that it could not exercise subject-matter jurisdiction under the Federal Arbitration Act ("FAA").

Appellants appeal this second order remanding the case for lack of subject-matter jurisdiction. But the Court has ironclad grounds to return the case to state court, where it belongs.

*First*, the Court lacks appellate jurisdiction because 28 U.S.C. § 1447(d) precludes review of remand orders based on lack of subject-matter jurisdiction. Each of the three circuits that has addressed this question agrees with Landbridge. And for good reason, as there is no "arbitration exception" to the statutory bar on appellate jurisdiction and no plausible basis to invent such an exception.

*Second*, even if this Court exercises appellate jurisdiction under Appellants' theory that the district court order should be treated as a denial of the merits of their motion to compel arbitration, the order should be affirmed. The district court correctly determined that Appellants' claim of arbitrability is so insubstantial that it affords no basis for exercising jurisdiction under the FAA. But at a minimum, the claim fails on the merits, which requires exactly the remand that the district court ordered based on lack of subject-matter jurisdiction.

Appellants executed the instant arbitration agreement behind Landbridge's back to sabotage Landbridge. The only party to the agreement related to

Landbridge is the holding company that Appellants had already stolen from Landbridge, as explained *infra*. This is why Appellants assert, wrongly, that Landbridge's claims somehow belong to the holding company. But the instant claims arise out of harms unique to Landbridge, not the holding company, and thus belong solely to Landbridge. Simply put, Landbridge did not agree to the sham arbitration, and Appellants cannot use their theft to turn Landbridge into a party to that arbitration.

Landbridge respectfully requests that the Court dismiss the appeal for lack of jurisdiction or, in the alternative, affirm.

## JURISDICTIONAL STATEMENT

Both the Court and the district court lack jurisdiction, as explained *infra*. This Court lacks jurisdiction because the order below is a remand order founded on the absence of subject-matter jurisdiction. *See* 28 U.S.C. § 1447(d). The district court lacks subject-matter jurisdiction because Appellants' claim of arbitrability is wholly meritless.

## STATEMENT OF ISSUES

1.     Whether this Court has appellate jurisdiction over a remand order that rests exclusively on the absence of subject-matter jurisdiction.

2.     Whether Appellants' motion to compel arbitration is meritless.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before the Court and Landbridge is not aware of any previous or pending appeals arising out of the same case or proceeding.

## STATEMENT OF THE CASE

### A. Factual Background

On February 9, 2024, Landbridge filed suit in the Delaware Court of Chancery against Appellants and their co-conspirators. [Appx-II 169-310 (public redacted); Appx-IX 3364-3501 (sealed)]. Landbridge also moved for a temporary restraining order and preliminary injunction. [Appx-VIII 2627-2695 (public redacted); Appx-IX 3306-3363 (sealed)]. Landbridge alleges unjust enrichment, conversion, and civil conspiracy, in addition to claims for declaratory and injunctive relief, arising out of the following facts.

### 1. Appellants And Their Co-Defendants Steal Landbridge's Rights To Develop The Panama Port Project

In September 2017, Landbridge paid $125 million to become the majority owner of a landmark port project in the Republic of Panama (the "Panama Project"), by acquiring 51% of the shares of the holding company Landbridge Holdings, Inc. ("LHI"). [Appx-II 197-99 ¶¶ 73-79]. LHI had four wholly owned Panamanian subsidiaries that owned the land and valuable concession rights to

develop, construct, operate, and manage the Panama Project: Panama Colon Container Port, Inc. ("PCCP"), United Crown Construction, Inc. ("UCC"), Central America Shopping Mall, Inc. ("CASM"), and Isla Margarita Development Inc. ("IMD") (collectively, the "Project Companies").  [Appx-II 196-198 ¶¶ 70-73 & n.8].

Under Landbridge's management and investment, the Panama Project advanced substantially.  [Appx-II 198-199 ¶¶ 76-78; 203 ¶ 89].  Then, in 2020, the COVID-19 pandemic swept the globe, causing Landbridge's representatives to return to China.  [Appx-II 203 ¶ 90].  Appellants and their co-conspirators—chief among them fellow co-defendants Liang Zhang ("Zhang") and Colin Michael Martinez ("Martinez")—seized this opportunity to launch a multi-year, multi-step scheme to wrest control of the Panama Project and the Project Companies from Landbridge.

In July 2020, Zhang, acting as a director of LHI, forged share-transfer documents to transfer Landbridge's (and its joint venture partner's) shares in LHI to a Singaporean company which he wholly owned, Sinolam Consulting & Trading Holdings PTE LTD. ("Sinolam").  [Appx-II 227-30 ¶¶ 173-76].  Zhang thereby illegally consolidated 100% of LHI under his control.  [Appx-II 230 ¶¶ 177-78; 234 ¶ 191].  Between August 2020 and June 2021, Zhang then secretly replaced Landbridge's representatives on the boards of LHI and the Panama Project

Companies with his hand-picked cronies: Martinez, another non-party co-conspirator named Tingyun Han ("Han"), and even Zhang's own cousin. [Appx-II 231-32 ¶¶ 179-81; 235-36 ¶¶ 196-198].

Next, on July 1, 2021, Zhang and Martinez caused the Project Companies to convene a series stockholder meetings with the aim of dismantling LHI's ownership of the Project Companies. They did so by cancelling LHI's existing shares in each Company and re-issuing two new types of stock: (i) Class A Non-Voting shares, and (ii) Class B Voting shares. All of the new Voting shares (and therefore functional control) of the Project Companies were immediately transferred to Appellant Coastal Infrastructure Partners LLC ("Coastal Partners"), then wholly owned by Co-Defendant Coastal Infrastructure Trust No. 1 ("Coastal Trust"), for which co-Defendant Martinez served as trustee. [Appx-II 186 ¶ 41; 236-37 ¶¶ 199-204]. LHI remained only with the Non-Voting shares.

### 2. Appellants And Their Co-Defendants Facilitate The Illegitimate Notarc Transaction And Share Subscription Agreement

In late March 2022, Appellants and their co-Defendants finalized the scheme to steal the Panama Project by organizing a sham third-party sale (the "Notarc Transaction") to consolidate the Project Companies under Appellant Notarc Port Investment LLC ("Notarc Port"). Appellants Leslie C. Bethel ("Bethel") and Dion L. Bowe ("Bowe") claim to jointly own Notarc Port through their direct ownership

6

of its parent, Appellant Notarc Partners. [Appx-II 239-245 ¶¶ 207-21].[1] The sham Notarc Transaction consisted of three parts:

*First*, for the grand total of $1, Notarc Port acquired the entirety of Coastal Partners—the entity illegally holding 100% of the exclusive Voting shares in the Panama Project Companies—from Coastal Trust and its trustee Martinez. [Appx-II 175 ¶ 137; 242-43 ¶ 214-15]. *Second*, Notarc Port acquired all of LHI's remaining Non-Voting shares in the Project Companies for the apparent sum of $80,303. At the time of the sale, Zhang wholly-owned LHI through Sinolam. [Appx-II 176 ¶ 14; 230 ¶¶ 177-78; 241-43 ¶¶ 213, 216]. Through these first two steps, Notarc Port—wholly owned by Notarc Partners, in turn owned 50/50 by Bowe and Bethel—purported to gain 100% ownership of the Project Companies. [Appx-II 184-85 ¶ 39 n. 3].

*Third*, Appellants and their co-conspirators then executed the Share Subscription Agreement ("SSA"), pursuant to which Notarc Port, Coastal Partners, LHI, and the Project Companies agreed to issue *additional new Class B Voting shares* in the Project Companies exclusively to Notarc Port, for the alleged amount of $938,356. [Appx-II 243 ¶ 217; 243-44 ¶ 219]. The parties to the SSA included Notarc Port and the Project Companies, in addition to Coastal Partners and LHI as

---

[1] In reality, Zhang, Martinez, Bowe, and Bethel had been working together since at least 2019 to steal the Panama Project from Landbridge. [Appx-II 220-23 ¶¶ 150-160].

the "Old Shareholders." [Appx-VII 2987]. Critically, besides authorizing the issuance and sale of these new shares, the final page of the SSA contains an arbitration clause, which states that "All disputes, controversy, difference or claim arising out of or relating to this Agreement shall be settled by the Parties … by arbitration in Panama[.]" [Appx-VII 2988].

The Notarc Transaction was an attempt to shield Appellants' and their co-conspirators' illegal conduct behind the guise of an arms-length, third-party sale. In reality, Bowe, Bethel, Zhang, and Martinez organized the Notarc Transaction amongst themselves, using their respective corporate entities, in an attempt to legitimize their theft of Landbridge's property and investments. Even after the Notarc Transaction, Bowe, Bethel, Zhang, and Martinez continued working together on the Panama Project, with Bowe serving as President of the Panama Project Companies, Martinez as Treasurer, and Zhang as Legal Representative. [Appx-II 244 ¶ 220; 247 ¶ 231].

### 3. Appellants Benefit From The Scheme, Leading To Landbridge's Discovery Of The Theft Of The Projects

The Notarc Transaction was accompanied by a misinformation campaign designed to ensure that Appellants and their co-conspirators received the economic benefits of their ill-gotten ownership of the Project Companies and the Panama Project.

Prior to the Notarc Transaction, but after illegally seizing control over LHI and the Project Companies from Landbridge in July 2020, Zhang and his team caused the largest of the Panama Project Companies, PCCP, to breach the concession terms by defaulting on payments to the Panamanian government and failing to comply with a local hiring mandate. [Appx-II 203-04 ¶¶ 91-95]. This led the Panamanian Maritime Authority ("PMA") to begin revoking PCCP's concession in June 2021. [Appx-II 203-04 ¶ 92].

Shortly after the Notarc Transaction, using the consequent apparent change in ownership of the Panama Project, Appellants and their co-conspirators approached the Panamanian government to "negotiate." [Appx-II 206-07 ¶¶ 101-106]. Appellants and their co-conspirators falsely represented themselves as a "leading" investment and asset management firm capable of making a "billion-dollar investment" to salvage the Panama Project. [Appx-II 206-07 ¶¶ 102, 105]. But the Notarc Transaction did not improve the financial conditions or development prospects of the Panama Project, because it was a sham transaction organized by co-conspirators who themselves had placed PCCP's concession at risk of revocation. [Appx-II 206-07 ¶ 104].

On May 16, 2022, PMA—on the basis of the above false representations—maintained PCCP's concession instead of revoking it. [Appx-II 206-07 ¶ 107]. But PMA also publicly announced the change of ownership. *Id.* Landbridge was

shocked to learn that its majority ownership interest in LHI, the Project Companies, and the Panama Project had been stolen. [Appx-II 204-05 ¶¶ 96-97]. Landbridge immediately began investigating and also instituted proceedings in Barbados to unwind and nullify Zhang's initial steps in the scheme (the "Barbados Action"). [Appx-II 178 ¶¶ 20-22].

### 4. Appellants Institute A Sham Arbitration Under The Share Subscription Agreement

As a result of the start of the Barbados Action, Notarc Port—along with its now wholly owned subsidiaries, the Project Companies and Coastal Partners—initiated an arbitration (the "Sham Arbitration") against LHI and Coastal Trust before the Conciliation and Arbitration Center of Panama ("CeCAP"), seeking two forms of relief: (1) a declaration that the agreements underlying the Notarc Transaction are valid and enforceable; and (2) a declaration that Notarc Port's purchase of the Panama Project Companies through the Notarc Transaction was bona fide and valid.[2] [Appx-II 178-79 ¶¶ 24-25; 248 ¶ 234]. Notarc Port initiated this Sham Arbitration pursuant to an arbitration clause in the SSA that serves no apparent purpose. [Appx-II 243 ¶ 218; 254-55 ¶¶ 252-55]. Notarc Port (and thus Bowe and Bethel) had acquired all voting and non-voting shares in the Project

---

[2] "The Panama Arbitration was only initiated because [Landbridge] claimed that it had a controlling interest in LHI and the Share Subscription Agreement was void." [Appx-II 113].

Companies from Zhang (through LHI) and Martinez (through Coastal Trust). [Appx-II 241-42 ¶¶ 213-14]. These two transactions are governed by separate sale and purchase agreements. *Id.* To the extent that the SSA served any purpose, therefore, it was to ensure that Notarc Port would remain the controlling owner of the Project Companies even if its purported purchase of shares from Zhang and Martinez were uncovered and overturned.

In fact, there is no controversy between the parties to the Sham Arbitration. [Appx-II 178-79 ¶¶ 24-25]. The parties intend through that proceeding to injure Landbridge by preventing it from seeking judicial relief in any forum—including in Delaware—against Appellants and their co-conspirators. [Appx-II 180 ¶ 28; 255 ¶¶ 256-57]. Notarc Port conceded this when it stated to Landbridge that it intended to use the Sham Arbitration to "estop" Landbridge "from asserting its rights in Panama and in other fora to the maximum extent permitted by applicable law." *Id.*

### 5. Landbridge's Underlying Complaint Before the Court of Chancery

Based on the foregoing allegations, Landbridge filed its Complaint in the Delaware Court of Chancery on February 9, 2024, seeking relief from the illegal scheme and to preserve the status quo so that Landbridge could begin to undo the damage done by Appellants and their co-defendants. Landbridge specifically

brought claims of unjust enrichment, conversion, and civil conspiracy against all the Defendants[3] based on their theft and retention of Landbridge's rights to LHI and the Project Companies. [Appx-II 265-84 ¶¶ 283-363]. In addition, Landbridge sought a declaratory judgment that Notarc's acquisition of the rights to the Panama Project is void on the basis that it was not a bona fide purchaser in good faith [Appx-II 284-89 ¶¶ 364-81]; and seeking to enjoin both (i) the Sham Arbitration [Appx-II 293-96 ¶¶ 395-409] and (ii) any further alienation of or decisions regarding the Port Project, while placing the Project Companies and the Panama Project under a constructive trust [Appx-II 290-93 ¶¶ 382-94]. Finally, Landbridge also requested findings of alter ego for Zhang and Notarc Port [Appx-II 298-99 ¶¶ 421-25] and for Bowe and Bethel, and Notarc Partners and Notarc Port [Appx-II 296-98 ¶¶ 410-20].

### B.    Proceedings Below

On February 26, 2024, Zhang and Sinolam removed the action to the U.S. District Court for the District of Delaware, contending that because the SSA contains an arbitration clause, the case was removable under Section 205 of the FAA. [Appx-II 162 ¶ 8; Appx-II 16 ECF No. 2]. Landbridge moved to remand on the ground (*inter alia*) that the federal district court lacked subject-matter

---

[3] Landbridge brought these claims under Delaware law, and alternatively under Panamanian and Barbadian law.

jurisdiction. [Appx-VIII 3046; Appx-II 17 ECF No. 14]. In response, Appellants opposed the motion to remand and filed a motion to compel arbitration. [Appx-VIII 3046-47; Appx-II 19 ECF No. 34; Appx-II 92-121]. The district court remanded for lack of subject-matter jurisdiction, because Appellants' notice of removal failed to present a defense of arbitrability. [Appx-VIII 3047; Appx-II 20 ECF No. 49]. The district court took no action on Appellants' motion to compel arbitration because "the Court is required to base [its] decision on the record existing at the time the petition for removal was filed." *Id.*

After the first remand, Appellants filed a second notice of removal so fast that the Court of Chancery did not have time to docket the certification of remand. [Appx-VIII 3047-50]. In response, Landbridge waived its procedural objections— *e.g.*, that Appellants failed to refile their motion to compel on the operative docket—and moved to remand for lack of subject-matter jurisdiction on the ground that Appellants' arbitrability defense was frivolous and designed to delay. [Appx-VIII 3134-36; Appx-VIII 3033-71].

## C. The District Court's Remand Order

On April 24, 2024, the district court granted Landbridge's motion to remand. It ruled that Appellants' arbitrability defense was so meritless that it could not sustain subject-matter jurisdiction under the FAA. [Appx-I 1-9]. The court held that Landbridge is not a party to the arbitration agreement and that Appellants'

13

arguments for nevertheless subjecting Landbridge to arbitration all fail. [Appx-I 7-9]. The court ruled that equitable estoppel could not apply and rejected Appellants' attempt to mischaracterize Landbridge's claims as belonging to LHI. [Appx-I 6-7]. Finally, the court noted the significant, troubling implication of adopting Appellants' position:

> If Defendants' theories that this agreement could bind the victim of the theft to arbitrate against the perpetrator were true, and the Court had no jurisdiction to determine whether the claims were plausibly arbitrable, then Defendants could set any arbitration procedures they desired … and Plaintiff would remain bound by the allegedly fraudulent contract.

[Appx-I 8]. The district court concluded: "The Court finds that Defendants do not have a plausible claim of arbitrability. The Court thus lacks jurisdiction and must remand the case to the Court of Chancery for further proceedings." [Appx-I 8]. In so doing, the Court did not decide Appellants' motion to compel arbitration. [Appx-I 7-9]

This appeal followed. Because the district court's order was a remand order, the clerk directed the parties to file written responses regarding the potential absence of appellate jurisdiction, Dkt. 3, which the parties did on May 16, 2024, Dkt. 8-10.[4] On February 6, 2025, the clerk consolidated this appeal with *Mack v. Six Flags Great Adventure, LLC*, No. 24-1184, and referred the issue of appellate

---

[4] Martinez and Coastal Trust have since withdrawn from the appeal. *See* Dkt. 25. The Sinolam Defendants never joined the appeal.

jurisdiction to the merits panel.  Dkt. 31.  The Court of Chancery has since stayed proceedings pending the outcome of this appeal.  *See* Dkt. 9-2.

## SUMMARY OF ARGUMENT

This Court should dismiss the appeal because 28 U.S.C. § 1447(d) precludes appellate jurisdiction.  Section 1447(d) bars appellate review of orders that are colorably characterized as remand orders based on a lack of subject-matter jurisdiction.  This order therefore cannot be reviewed because it plainly, not just colorably, is a remand order meeting that description.  Appellants cannot sidestep this well-settled rule by invoking the FAA because the FAA itself incorporates section 1447(d).  Nor is the instant order reviewable as a collateral order, since its analysis of arbitrability is subservient to the jurisdictional inquiry and does not conclusively resolve arbitrability.

In the alternative, the Court should affirm.  Even assuming that the district court effectively denied Appellants' motion to compel arbitration, remand to state court is required because the motion is meritless.  Regardless of whether the motion is so meritless that it does not confer jurisdiction at all—as the district court correctly held—denial of the motion negates the only basis for exercising jurisdiction over Landbridge's state-law claims and necessitates remand.

Appellants' assertion of arbitrability is meritless for two independent reasons.  First, the arbitration agreement applies only to contractually defined

"Parties" and Landbridge is not among them. Second, Landbridge cannot be bound to the agreement because it never signed the agreement and Appellants' theories of binding Landbridge as a non-signatory all fail. Landbridge is not equitably estopped from challenging arbitration because it is not seeking the benefit of the agreement that Appellants created behind Landbridge's back to facilitate their theft of Landbridge's property. Nor do Landbridge's claims somehow belong to LHI, the signatory and holding company in which Landbridge held stock before Appellants illegally spirited it away. Under Delaware law, Landbridge alleges direct claims for injuries unique to itself, not claims on behalf of the corporation. In short, there is no plausible argument that an arbitration agreement that Landbridge did not sign prevents Landbridge from bringing claims for its injuries caused in part by that very agreement. Thus, if the Court entertains the appeal at all, it should affirm.

## STANDARD OF REVIEW

The Court reviews appellate jurisdiction de novo. *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010). It also reviews denials of motions to compel arbitration de novo. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 n.7 (3d Cir. 2024). "In reviewing a district court's refusal to compel arbitration at the pleadings stage, we accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the party opposing arbitration." *MZM Constr.*

16

*Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 395 (3d Cir. 2020).

**ARGUMENT**

## I. THE COURT LACKS APPELLATE JURISDICTION

### A. Section 1447(d) Bars Review Of Remand Orders Based On Lack Of Subject-Matter Jurisdiction

This Court lacks appellate jurisdiction here under well-established principles of federal law. Under 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal," with two exceptions that are undisputedly not applicable here. Section 1447(d) applies to remand orders "based on a ground specified in § 1447(c)." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009). "One type of remand order governed by § 1447(c) … is a remand order based on a lack of 'subject matter jurisdiction.'" *Id.*

The district court's remand order here is expressly based on lack of jurisdiction, and it therefore is "not reviewable on appeal" under the plain terms of the statute. Any "review of the District Court's characterization of its remand as resting upon lack of subject-matter jurisdiction, to the extent it is permissible at all, should be limited to confirming that that characterization was colorable." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 234 (2007).

The order below is unreviewable because it plainly (not just colorably) rests on a lack of subject-matter jurisdiction. *See, e.g.*, *Bank of New York Mellon Tr. Co., N.A. v. Cresci*, 2018 WL 11211439, at *1 (3d Cir. Oct. 26, 2018) (summary dismissal where the "remand order is 'colorably characterized' as based on lack of subject-matter jurisdiction"). The district court framed its decision as addressing Landbridge's motion to remand for lack of subject-matter jurisdiction. [Appx-I 1]. The district court then analyzed whether Defendants had demonstrated the existence of subject-matter jurisdiction. [Appx-1 3-7]. Finally, it concluded that it "lacks jurisdiction and must remand the case." [Appx-1 8]. That should be the end of the matter.

Appellants rely (Br. 1) on the FAA, but the FAA says nothing about appellate jurisdiction over a remand order. The FAA confers appellate jurisdiction over an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(c). But it does not mention remand orders, let alone permit courts to recharacterize remand orders. To the contrary, the removal statute in the FAA incorporates "[t]he procedure for removal of causes otherwise provided by law." 9 U.S.C. § 205. It thus incorporates Section 1447, which governs the "[p]rocedure after removal generally," and it certainly does not purport to amend or alter the jurisdictional limitations in Section 1447.

Appellants erroneously claim (Br. 1-3) that because the district court had to undertake a provisional assessment of arbitrability to assess jurisdiction, it "effectively" denied Appellants' motion, and Appellants wrongly conclude that this would allow for appellate review.  But even assuming the district court "effectively" denied the motion, that does not matter because the order *explicitly* remanded for lack of jurisdiction.  Section 1447 precludes review of remand orders based on lack of jurisdiction *regardless* of whether the reasoning on jurisdiction could be relevant to some merits issue.  Indeed, this Court has rejected an attempt to claim that an issue is "collateral" to a remand order, and therefore reviewable, where (as here) "it is impossible to disaggregate the order [being challenged] from the remand order itself" and review would "subvert the remand order by convincing this Court that … jurisdiction does, indeed, exist." *Agostini v. Piper Aircraft Corp.*, 729 F.3d 350, 355 (3d Cir. 2013).

Every circuit that has addressed whether Section 1447(d) applies to remand orders that contain assessments of arbitrability agrees with Landbridge that it does. *See Wu v. Liu*, 131 F.4th 1295, 1299-1301 (11th Cir. 2025); *Totalenergies Renewables USA, LLC v. Trina Solar (U.S.), Inc.*, 2023 WL 8821328, at *1 (9th

Cir. Dec. 21, 2023) (unpublished); *Dahiya v. Talmidge Int'l, Ltd.*, 371 F.3d 207, 210 (5th Cir. 2004).[5]

The Eleventh Circuit's recent decision in *Wu v. Liu* is exemplary. "[I]n a single order," the district court had expressly denied a motion to compel arbitration *and* remanded for lack of subject-matter jurisdiction. 131 F.4th at 1297. The court held that Section 1447(d) precluded review. *Id.* It explained that "[w]hen Congress intends to make Section 1447(d) inapplicable to new grounds for removal, it says so expressly." *Id.* at 1300. But, in the FAA, Congress did the opposite by incorporating nearly all of Section 1447(d) into the removal statute. *Id.* Further, Congress provided no basis to exempt "orders that both deny a motion to compel arbitration and remand the suit for lack of jurisdiction." *Id.* "A contrary conclusion would render Section 1447(d) a nullity" because "nearly every case" removed under the auspices of the FAA require some determination of arbitrability. *Id.* (internal citation omitted).

---

[5] In contrast, none of the cases Appellants cite concerns a remand order. In *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, the district court effectively denied a motion to compel under auspices of denying a motion to dismiss. 72 F.4th 499, 504-05 (3d Cir. 2023). In *Sarah Car Care, Inc. v. LogistiCare Sols., LLC*, the district court effectively denied a motion to compel under auspices of denying a motion for a protective order. 2023 WL 5378845, at *2 (3d Cir. Aug. 22, 2023). And in *Intertec Contracting A/S v. Turner Steiner Int'l, S.A.*, the district court expressly declined to issue a remand order at all. 6 F. App'x 61 (2d Cir. 2001).

This is an *a fortiori* case from *Wu*. In *Wu*, the district court had at least denied a motion to compel. The district court here reached only one conclusion: that it lacked subject-matter jurisdiction. The order in which it did so is thus unreviewable based on the plain language of Section 1447(d). The Court's "only function remaining" consists of "announcing the fact and dismissing the case." *Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 269 (3d Cir. 2013) (internal citation and quotation omitted).

**B.      The Collateral Order Doctrine Does Not Apply**

Appellants wrongly suggest (*see* Br. 1 n.1) that the judge-made collateral order doctrine provides a loophole for evading Section 1447(d). "To be appealable under the collateral order doctrine, an order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld*, 604 F.3d 816, 819 (3d Cir. 2010) (internal quotations omitted). The first criterion is not satisfied here, as other circuits have held. *Dahiya*, 371 F.3d at 210; *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 623, 625 (8th Cir. 1997); *Totalenergies*, 2023 WL 8821328, at *2. The reason is simple: a district court without subject-matter jurisdiction cannot conclusively determine the merits of arbitrability. *See Atlantic Ship Rigging Co. v. McLellan*, 288 F.2d 589, 591 (3d

21

Cir. 1961) (a court without jurisdiction cannot even transfer the case). Thus, "the District Court's decision has no preclusive effect, other than on the merits of its jurisdictional ruling." *Levin v. Lillien*, 511 F. App'x 149, 150 (3d Cir. 2013); *cf. Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 276 (3d Cir. 2013) (no collateral-order review because remand to administrative agency "is not a final order under § 1291").

*Wu* again is on point. In *Wu*, the district court "conducted its arbitration analysis as an assessment of 'jurisdictional prerequisites.'" 131 F.4th at 1301. The result was an unreviewable "'jurisdictional finding[ ]' that has no effect on the state action." *Id.* The same is true here. On remand, Appellants may ask the state court to compel arbitration. The state court will not be bound by any reasoning in the remand order. So the remand order is not a collateral order that gives rise to appellate jurisdiction.

Finally, in the consolidated case of *Mack v. Six Flags Great Adventure LLC*, No. 24-1184 (3d Cir.), the appellants rely on *City of Waco, Tex. v. U.S. Fid. & Guar. Co.*, 293 U.S. 140 (1934), but *Waco* applies only where "the decree of dismissal preceded that of remand … and, if not reversed or set aside, is conclusive upon the petitioner." 293 U.S. at 143. Here, as discussed above, there was no preceding ruling and no conclusive ruling at any time on the motion to remand. In addition, *Waco* held that "[a] reversal cannot affect the order of remand." *Id.* Such

a reversal of a remand order is exactly what Appellants request here; as courts uniformly recognize, that is impermissible as a matter of law.

## II.   THE MOTION TO COMPEL ARBITRATION IS MERITLESS

If this Court treats the district court's order—contrary to its plain terms—as a denial of Appellants' motion to compel arbitration and if this Court exercises appellate jurisdiction, it should affirm.  The district court rightly held that Appellants' motion to compel arbitration is so meritless that it fails to confer subject-matter jurisdiction.  *See Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991).  Appellants cannot dispute that the ruling as to subject-matter jurisdiction is unreviewable on appeal.  Instead, the premise of Appellants' appeal is that this jurisdictional ruling can be converted into a ruling on the merits of the motion to compel arbitration.  Thus, the only question on appeal (again, assuming appellate jurisdiction exists at all) is whether the motion to compel is or is not meritorious.

If this Court holds that the motion to compel fails on the merits, that would require a remand to state court, just as the district court ordered based on lack of subject-matter jurisdiction.  Where, as here, a motion to compel arbitration would confer subject-matter jurisdiction under the FAA, [Appx-II 160-61 ¶ 1], denial of the motion negates that jurisdiction.  *See Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir. 2002).  "[W]ith any federal anchor gone, supplemental jurisdiction over the

residual state claims disappears as well." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 28, 39 (2025). Accordingly, the district court "must remand the case." *Id*. As discussed below, for the same reasons the district court found the motion to compel arbitration frivolous, at a minimum it fails on the merits and this Court should affirm.

## A. Appellants' Arbitration Agreement Does Not Apply Here

There are "two threshold questions" when evaluating an arbitrability defense: (1) "Does the dispute between those parties fall with the language of the arbitration agreement?" (2) "Did the parties seeking or resisting arbitration enter into a valid arbitration agreement?" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (cleaned up). In answering these questions, the Court takes Landbridge's allegations as true and draws inferences in Landbridge's favor. *MZM Constr. Co.*, 974 F.3d at 395. If the answer to either question is no, the Court must affirm. The answer to both questions clearly is no.

### 1. The Arbitration Agreement Does Not Cover This Action Because It Excludes Landbridge

#### (a) The Scope Of The Arbitration Agreement Is For The Courts To Decide

As an initial matter, the Court may address the scope of the arbitration agreement because the agreement does not delegate that issue to the arbitrator. Appellants do not dispute this point, and in fact the argue (Br. 51-54) about scope

at length, asserting that "the district court erred in not finding that the arbitration agreement covers the dispute." Appellants thereby confirm that this is an issue for the courts to decide, and to the extent Appellants attempt to argue otherwise in reply, such an argument is waived. Regardless, such an argument would be meritless.

Courts decide the scope issue unless it is "clearly and unmistakably" delegated to the arbitrator. *Field Intel. Inc. v. Xylem Dewatering Solutions Inc.*, 49 F.4th 351, 356 (3rd Cir. 2022). Here, the agreement provides that "the Parties" shall arbitrate "[a]ll disputes, controversy, difference or claim arising out of or relating to this Agreement … in accordance with the CeCAP arbitration rules then in effect." [Appx-VII 2988]. The CeCAP rules, in turn, provide that "[t]he Arbitral Tribunal will be authorized to decide on its own competence." [Appx-III 987]. But the predicate for this delegation of authority is a dispute between "the Parties" specified in the agreement. The agreement defines "the Parties" as "the parties to this Agreement," which are listed on page one. [Appx-VII 2987]. Landbridge Port Services (Hong Kong) Ltd. is not among them. Because Landbridge is not a Party, the delegation clause does not apply. *Cf. Archer & White Sales, Inc.*, 935 F.3d 274, 281 (5th Cir. 2019); *NASDAQ OMX Grp., Inc.*, 770 F.3d 1010, 1031-32 (2d Cir. 2014).

### (b)    The Arbitration Provision Does Not Cover A Dispute
####        With A Non-Party To The Arbitration Agreement

If the terms of the arbitration provision do not cover this action, the Court's inquiry ends. *CardioNet, Inc.,* 751 F.3d at 179. "[W]hether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." *Id.* at 172. "[T]he presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract controls." *Id*. at 173 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)).

This action plainly falls outside the scope of the arbitration agreement. As noted above, the predicate for arbitration is a dispute between the Parties. Because Landbridge is not a Party, the inquiry ends. *See McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 773-74 (2d Cir. 1992) (no arbitration where the agreement "applies to 'any controversy which may arise between myself [McPheeters] and yourself [SSC],' indicating that it covers only disputes between these two parties.").

Appellants miss the point in focusing (Br. 51) on the fact that the arbitration agreement covers disputes "arising out of or relating to" the agreement. That scope still applies *only* to disputes between the contractually defined Parties. Thus,

regardless of whether the dispute arises out of or relates to the agreement, it is subject to arbitration only if it *also* is a dispute between the Parties. Because Landbridge is not a Party as defined in the agreement, the remainder of the contractual language—however broad—does not apply to it.

But even if the Court looks past the express limitation of the agreement to "Parties," Appellants stretch the term "relating to" past its breaking point in their enthusiasm to expand arbitration. As courts have explained when interpreting arbitration agreements, the term "'related to' marks a boundary by indicating some direct relationship; otherwise the term would stretch to the horizon and have no limiting purpose." *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 798 (9th Cir. 2017) (cleaned up) (collecting cases). Here, neither the agreement's construction nor its application is at issue. *Cf. Medtronic AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3d Cir. 2004) (a license defense "unquestionably turns on the construction of the Agreement"). Rather, the agreement matters only as an instrument of Appellants' unlawful scheme. For purposes of compelling arbitration, it makes little sense to say that an agreement in furtherance of a conspiracy "relates to" the very case brought by a non-party to stop the conspiracy. As a matter of contract interpretation, interpretations that advance illegal ends are to be avoided. *Doyle v. U.S. Sec'y of Lab.*, 285 F.3d 243,

251 (3d Cir. 2002) (citing *Walsh v. Schlecht,* 429 U.S. 401, 407-08 (1977)). But Appellants' interpretation does just that.

From multiple perspectives, therefore, the contractual language suffices for affirmance.

### 2. The Arbitration Agreement Does Not Bind Landbridge

Even had the Appellants entered an arbitration agreement that purported to bind Landbridge, Appellants' motion to compel would fail because Appellants cannot bind an absent third party. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). An "arbitrator's authority derives solely from the parties' agreement to submit their disputes to arbitration." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010) (internal citation omitted). Accordingly, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Id.* (internal citation omitted). Here, Landbridge did not agree to the SSA. In response, Appellants advance two theories for binding Landbridge. Neither succeeds.

### (a) Landbridge Is Not Equitably Estopped Because The Arbitration Agreement Harms Landbridge

"The presumption in favor of arbitration does not extend … to non-signatories to an agreement." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014). A non-signatory such as Landbridge may be bound only "under

28

certain very limited circumstances." *Invista S.A.R.L.*, 625 F.3d at 84. "There are five theories for binding non signatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id*.[6] Of these, Appellants point to estoppel, but estoppel does not apply.

Estoppel binds a non-signatory "when the non-signatory knowingly exploits the agreement containing the arbitration clause despite." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001). This occurs when a non-signatory is "obtaining direct benefits from that contract" or is "seeking to enforce terms of that contract or asserting claims based on the contract's other provisions." *Griswold*, 762 F.3d at 272 (cleaned up). Landbridge fits none of these descriptions. Far from Landbridge benefiting from the SSA, the SSA is relevant only because Appellants are using it to harm Landbridge by stealing its assets and sealing them behind a sham arbitration award.

---

[6] Federal common law governs these inquiries because they arise in the context of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which aims to standardize international arbitration. *See Setty v. Shrinivas Sugandhalaya, LLP*, 3 F.4th 1166, 1168 (9th Cir. 2021). Moreover, Appellants rely (Br. 45-47) on federal and Delaware law without distinction, and Landbridge agrees there is no meaningful distinction between the two.

Appellants' rebuttals fail. First, Appellants incorrectly argue (Br. 48-49) that the relationship between the agreement and Landbridge's claims requires estoppel. It is well settled that such an "intertwinement" theory does not apply where, as here, the "case involves a signatory [Appellants] attempting to bind a nonsignatory [Landbridge] to the arbitration clause, rather than the inverse." *Griswold*, 762 F.3d at 272 (citing *Dupont*, 269 F.3d at 202). Moreover, it does not suffice that the contract is a link in the causal chain. *See Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 775-79 (2d Cir. 1995).

Second, Appellants erroneously pretend (Br. 45) that Landbridge's state court claims invoke the arbitration agreement's language allowing injunctive relief. In fact, Landbridge is invoking a right to injunctive relief that flows from its claims and the law of equity, not from the agreement. The fact that the arbitration agreement separately provides for injunctive relief is irrelevant.

Third, Appellants erroneously claim (Br. 25-26) that Landbridge seeks the economic benefits of the agreement. According to Appellants, the SSA is a link in the causal chain that led Panama to restore the Project's concession rights. According to Appellants, Landbridge wants the benefit of this outcome. However, there is no benefit, only harm, to Landbridge. The Complaint controls this question, which Appellants ignore. Under the Complaint, it makes no sense to say that Landbridge seeks the benefit of an agreement that was integral to the

transaction that Landbridge is asking the Delaware court to declare null and void as an instrumentality of Appellants' attempt to steal Landbridge's property. [Appx-II 288-89 ¶ 379]. Moreover, the Complaint refutes Appellants' attempt to link the agreement to the supposed "benefit" of restored concession rights. As the Complaint sets forth, the Panamanian government threatened the Project only because Appellants deliberately imperiled the Project as cover. [Appx-II 203-04 ¶¶ 91-94]. By positioning the Project as in need of rescue, Appellants could portray their actions as a legitimate effort to save it. [Appx-II 207 ¶¶ 105-07]. This was a facade. [Appx-II 204 ¶¶ 95]. Appellants went on to deceive the government by lying about the Project's new owner and its supposed financial backing. [Appx-II 206-07 ¶¶ 100-07]. Hence, the "benefit" for which Appellants claim credit is based on lies and is doomed to unravel, to Landbridge's great detriment. [Appx-II 291 ¶ 388 (Appellants' "false and misleading representations threaten the good will and relationships that Plaintiff has developed with the Panamanian government and third-party contractors.")]. In any event, Appellants' unsupported assertion of a "benefit" does not even attempt to identify a "direct" benefit—*i.e.*, a benefit flowing from one or more contractual provisions—as required by law. *Griswold*, 762 F.3d at 272; *see also Thomson-CSF*, 64 F.3d at 775-79; *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 222 n.8 (3d Cir. 2014).

Finally, Appellants are themselves estopped from asserting estoppel because they have unclean hands. "He who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (cleaned up). Defendants may not assert equitable defenses if they have acted inequitably. *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010); *Scheiber v. Dolby Lab'ys, Inc.*, 293 F.3d 1014, 1022 (7th Cir. 2002). This rule applies to defendants seeking to rely on equitable estoppel to enforce the terms of an agreement. *Greenwood v. Raznick*, 326 F. App'x 362, 369 & n.5 (6th Cir. 2009). It thus applies to Appellants here. They cannot properly shield themselves behind an illusory benefit that is predicated on the harms they have caused.

### 3. Landbridge's Claims Do Not Belong To LHI

Appellants wrongly claim (Br. 31-44) that certain of Landbridge's claims are derivative stockholder claims brought on behalf of LHI, such that those claims must be arbitrated. Indisputably, if Landbridge's "claims belong to" LHI, then LHI's "consent to arbitrate controls." *Berkelhammer v. ADP TotalSource Grp., Inc.*, 74 F.4th 115, 120 (3d Cir. 2023). But the idea that Landbridge's claims belong to LHI violates settled Delaware law and does not withstand scrutiny.

Whether a stockholder's claim is derivative "depends on the nature of the claim itself." *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1138 (Del.

2016).[7] If the claim is based on the breach of a fiduciary duty owed by a corporate director, the test from *Tooley v. Donaldson, Lufkin & Jenrette, Inc.* 845 A.2d 1031, 1035 (Del. 2004), draws "the line between direct actions for breach of fiduciary duty suits by stockholders and derivative actions for breach of fiduciary duty suits subject to the demand excusal rules set forth in § 327 of the Delaware General Corporation Law[.]" *Citigroup*, 140 A.3d at 1138 (quoting *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 179 (Del. 2015)). The *Tooley* test focuses "solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Tooley,* 845 A.2d at 1035. If "the duty breached was owed to the stockholder" and the stockholder "can prevail without showing an injury to the corporation," the claim is direct, not derivative. *Id.* at 1039.

Appellants now state (Br. 40) that only Counts 10-12 state derivative claims for purposes of this analysis. This supposed clarity is late in coming. Previously, Appellants stated that they "do not contend that all of Plaintiff's claims are derivative," [Appx-VIII 3151 n.2], but failed to identify which claims they believed were derivative. As a result, Appellants cannot properly accuse (Br. 22)

---

[7] Appellants apply Delaware law (*see* Br. 30-31, 37-38), and Landbridge agrees. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316-17 (3d Cir. 2014) (choice-of-law issues may be waived and agreed).

the district court of error to the extent that it purportedly "relied on other claims." Appellants invited any such error. *United States v. Maury*, 695 F.3d 227, 256 (3d Cir. 2012). But the district court did not err.

None of Landbridge's claims are derivative because all of them are about one thing: harm to Landbridge caused by Appellants, not harm to LHI. Landbridge's claims attack Appellants' fraudulent and illegal conduct in dispossessing Landbridge of its interests in the Panama Project. Landbridge was divested of the shares it directly owned in LHI and lost the benefit of its own investment of hundreds of millions of dollars in the Project Companies and the Panama Project itself. [*See, e.g.,* Appx-II 174-270 ¶¶ 8, 9, 91, 97, 150, 155, 157, 165, 179, 196, 205, 287, 299, 307)]. LHI did not sustain these injuries; Landbridge did. Because this case is about Landbridge's property rights and the injury caused to Landbridge's rights by Appellants, *Tooley* dictates that those are direct claims.

Counts 10-12 are direct claims under *Tooley*. Count 10 seeks a declaratory judgment that the Notarc Transaction is invalid because it furthers Appellants' scheme to divest Landbridge of its property interests. [Appx-II 285-86 ¶¶ 368-71]. That scheme breaches numerous common-law duties owed to Landbridge. It also harms Landbridge even if it benefits LHI. So the claim belongs to Landbridge. Count 11 seeks injunctive relief to bar Appellants from disposing of Landbridge's property interests. [Appx-II 292 ¶ 393]. When Appellants do so, they injure

Landbridge by usurping its rights even if their decisions benefit LHI. So the claim belongs to Landbridge. Finally, Count 12 seeks injunctive relief to halt the Sham Arbitration because it furthers Appellants' scheme to divest Landbridge of its property interests. [Appx-II 293-96 ¶¶ 396, 404, 409]. If Appellants succeed, Landbridge will be harmed, not LHI. So the claim belongs to Landbridge.

As helpful contrast, Appellants provide an example of a claim that would belong to LHI (Br. 53-54): a claim of fraud in the inducement of the SSA. Were Landbridge to claim that LHI signed the SSA only because of material misrepresentations and to assert the corresponding cause of action, Appellants could plausibly move to sever that claim from the case and send it to arbitration. But Landbridge did not raise that claim and does not purport to bring any similar claim belonging to LHI in the Complaint.

Appellants suggest (Br. 31) that this action is premature because it is "based on a purported, but yet undecided, interest in LHI" being litigated in Barbados, but this is incorrect. Landbridge repeatedly alleges an interest in LHI. [Appx-II 4-288 ¶¶ 6, 8, 11, 18, 21-22, 33-35, 53, 55, 79, 84-86, 154, 167, 170-72, 185, 205, 272, 283-93, 298-300, 307-09, 311, 311 at n. 24, 313-14, 319, 321-23, 327-28, 333-39, 341, 348-49, 362, 371-72, 378]. To prove this allegation, Landbridge may rely on the preclusive effect of the Barbados action, or it may not. None of this is relevant to whether its claims are derivative.

Appellants also argue (Br. 32-41) that Landbridge's claims are "indirect" because they involve the Project companies' stock that was held by LHI, and disputes over "the sale of a corporate asset to a third party is a right belonging to the corporation." This argument blinks reality. Appellants ignore the central fact that Landbridge has its own property interest in the stock it held in LHI, which designedly provided economic benefits through LHI's ownership of the Project companies. *See Snyder v. Comm'r of Internal Revenue*, 73 F.2d 5, 7 (3d Cir. 1934), *aff'd*, 295 U.S. 134 (1935) ("shares of stock … are the interest or right which the owner has in the management, profits and assets of a corporation. Though incorporeal, they nevertheless are property and are the subject of conversation." (internal citation omitted)); *e.g.*, *Jack v. S. Park Ventures, LLC*, 2018 WL 1158370, at *4 (S.D. Ohio Mar. 5, 2018) (direct claim alleged for "concerted effort to force [stockholder] out" and eliminate financial benefits). The fact that Notarc Port replaced LHI as the owner of the project companies is relevant *not* because it involved a bad sale (though it did). Rather, it is relevant because it furthers Appellants' unlawful effort to place as many barriers as possible between Landbridge and its rights and interests. Appellants' actions, while involving LHI, *harmed Landbridge directly*. It is this harm that Landbridge seeks to redress through its Complaint. Appellants have no response to this fundamental and dispositive point.

## B.    Appellants' Policy Arguments Fail

The district court rightly noted the absurdity of Appellants' position. [Appx-I 8]. The logic of their position is that federal courts must effectuate arbitration agreements designed to fulfill unlawful objectives by being effectuated. That position is self-refuting. It turns federal courts into conspirators' helpless pawns. Appellants quibble (Br. 55-56) over the terms that particular arbitration agreements may impose, but miss the point that their position is untenable as a matter of principle.

Appellants' policy arguments (Br. 56) do not persuade. First, Appellants claim (Br. 56) that Landbridge's separate litigation in Barbados should matter. It does not. The fact that Landbridge is separately maintaining a suit against certain Barbados-domiciled parties to the unlawful arbitration may give rise to a preclusion issue at some point it the future, but it has nothing to do with the merits of compelling arbitration.

Second, Appellants claim (Br. 57) that arbitration is inconsequential because Landbridge still may seek money damages in court. That is false; money damages cannot remedy the irreparable harm of permanently losing control over the port project. *See Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255-56 (3d Cir. 2011).

Third, Appellants claim (Br. 57) that ruling for Landbridge would allow "any current or former shareholder that is aggrieved by a company action to assert a claim to void the company's consummated contract … without it being characterized as a derivative claim." But the Court need only hold that a former stockholder's claim to recover its property interests that have been imperiled by the actions of those who illegally seized control of them is not a derivative claim under the facts of this case.

Finally, Appellants claim (Br. 58) that ruling for Landbridge would "open the door to non-shareholder, nonparty, and non-signatories interfering with a company's contractual arbitration rights." To the contrary, it is Appellants who hope to interfere with Landbridge's right (as a non-party) not to arbitrate by unilaterally imposing a duty to arbitrate to which Landbridge never agreed.

## CONCLUSION

The Court should dismiss the appeal for want of jurisdiction or, in the alternative, affirm.

Dated:  May 16, 2025                    Respectfully submitted,

                                        *s/    David M. Cooper*

Michael A. Barlow                       David M. Cooper
QUINN EMANUEL URQUHART                   QUINN EMANUEL URQUHART
    & SULLIVAN, LLP                          & SULLIVAN, LLP
500 Delaware Avenue, Suite 220          295 Fifth Ave., 9th Floor
Wilmington, Delaware 19801              New York, New York 10016

David M. Orta                           Arian J. Koochesfahani
QUINN EMANUEL URQUHART                   QUINN EMANUEL URQUHART
    & SULLIVAN, LLP                          & SULLIVAN, LLP
1300 I Street NW, Suite 900             865 S. Figueroa Street, 10th Floor
Washington, D.C. 20005                  Los Angeles, California 90017

                                        *Counsel for Plaintiff-Appellee*

**CERTIFICATE OF ADMISSION TO BAR**

I, David M. Cooper, certify as follows:

1. I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2025　　　　　　_s/　　David M. Cooper_
　　　　　　　　　　　　　　　David M. Cooper

　　　　　　　　　　　　　　　*Counsel for Appellee*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I also certify that service will be accomplished on all registered CM/ECF users by the appellate CM/ECF system.

Dated: May 16, 2025     *s/    Arian J. Koochesfahani*
Arian J. Koochesfahani

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

I certify the following in compliance with Federal Rule of Appellate Procedure 32(g): The foregoing brief is in 14-point, proportionally spaced Times New Roman font and contains 8478 words, excluding the parts of the document exempted by Rule 32(f). Further, in accordance with Local Rule 31.1, the text of the brief is identical to the text of its paper copies, and the brief was scanned for viruses by CrowdStrike Falcon software v.7.21.19205.0 with no viruses detected.

Dated: May 16, 2025     *s/  Arian J. Koochesfahani*
Arian J. Koochesfahani

*Counsel for Appellee*