# United States Court of Appeals

*for the*

# Third Circuit

## Case No. 24-1817

LANDBRIDGE PORT SERVICES (HONG KONG) LTD.,

*Plaintiff-Appellee,*

— v. —

NOTARC PORT INVESTMENT LLC; NOTARC INVESTMENT PARTNERS LLC; COASTAL INFRASTRUCTURE PARTNERS LLC; COASTAL INFRASTRUCTURE TRUST NO. 1; LIANG ZHANG; DION L. BOWE; LESLIE C. BETHEL; COLIN MICHAEL MARTINEZ; SINOLAM CONSULTING & TRADING HOLDINGS PTE LTD.

Notarc Port Investment LLC, Notarc Investment Partners LLC, Coastal Infrastructure Partners LLC, Dion L. Bowe, Leslie C. Bethel,

*Defendants-Appellants.*

_____

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE IN CASE NO. 1:24-CV-00397, GREGORY B. WILLIAMS, DISTRICT JUDGE

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

JOHN ARRASTIA, JR., ESQ.
JENNIFER M. HERNANDEZ, ESQ.
CONTINENTAL PLLC
*Attorney for Defendants-Appellants*
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707
jarrastia@continentalpllc.com
jhernandez@continentalpllc.com

CHAD S.C. STOVER, ESQ.
BARNES & THORNBURG LLP
*Attorney for Defendants-Appellants*
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
(302) 300-3434
chad.stover@btlaw.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 2

I.    This Court Has Jurisdiction to Hear This Appeal ...................... 3

   a.   The Notarc Parties Properly Removed to Federal Court .......... 3

   i.  LPS HK's Complaint ................................................................. 5

   ii. The Notarc Parties' removal petition ...................................... 5

   b.   The FAA Does Not Condition Judicial Remedies
        or Appellate Rights Based on Whether a Plaintiff or
        Defendant Invokes Its Provisions. ............................................ 6

   c.   The Court May Read the FAA Harmoniously With,
        Yet Substantively Supreme Over, Procedural Statutes. ........... 9

   i.  The FAA undermines LPS HK's argument that a party
        must win the race to the courthouse to preserve its
        appellate rights ........................................................................ 11

   ii. The *Waco* doctrine permits appellate review .......................... 14

   iii. LPS HK's argument lacks supporting legal authority ............ 16

II.   LPS HK's Derivative Claims Should Be Compelled to
      Arbitration. ................................................................................ 17

   a.   A Close Reading of the Complaint Illustrates LPS HK's
        Claims are Derivative and Subject to Arbitration. ................... 18

   b.   LPS HK Should Be Compelled to Arbitrate Its Derivative
        Claims Even as a Non-Party to the Share Subscription
        Agreement .................................................................................. 22

III.  LPS HK Should Be Bound to Arbitrate Under the Doctrine
      of Equitable Estoppel .................................................................. 23

a.  Appellee Cannot Obtain Benefits Under the Share
    Subscription Agreement While Disavowing its Arbitration
    Clause .......................................................................................24

b.  The Doctrine of Unclean Hands Does Not Save Appellee's
    Claims from Arbitration..........................................................26

IV. LPS HK's Position is Contrary to Public Policy and the
    Intent Behind the New York Convention ..................................29

CONCLUSION ........................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Master Maint. & Constr., Inc.*,
    452 F.3d 373 (5th Cir. 2006) ................................................. 3

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................... 14

*Bank of New York Mellon Trust Co., N.A. v. Cresci*,
    No. 18-1850, 2018 WL 11211439 (3d Cir. Oct. 26, 2018) ................... 17

*Battaglia v. McKendry*,
    233 F.3d 720 (3d Cir. 2000) ................................................. 23

*Beiser v. Weyler*,
    284 F.3d 665 (5th Cir. 2022) ................................................. 4

*BP P.L.C. v. Mayor of Balt.*,
    593 U.S. 230 (2021) ........................................................... 12

*Carlsbad Technology, Inc. v. HIF Bio, Inc.*,
    556 U.S. 635 (2009) ........................................................... 17

*Catz v. Precision Glob. Consulting*,
    No. 19 Civ. 7499, 2021 WL 1600097 (S.D.N.Y. Apr. 23, 2021) ........... 27

*City of Waco v. U.S. Fidelity & Guar. Ins. Co.*,
    293 U.S. 140 (1934) ........................................................... 15

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023) ........................................................... 13

*Dahiya v. Talmidge Int'l Ltd.*,
    371 F.3d 207 (5th Cir. 2004) ............................................. 10, 16

*Dahiya v. Talmidge Int'l Ltd.*,
    931 So. 2d 1163 (La. Ct. App. 2006) ....................................... 16

*Doyle v. U.S. Sec'y of Labor*,
  285 F.3d 243 (3d Cir. 2002) ............................................................. 23

*Dunn v. Commodities Futures Trading Comm'n*,
  519 U.S. 465 (1997) .......................................................................... 8

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) .......................................................................... 8

*First Nat'l Bank v. Genina Marine Servs.*,
  136 F.3d 391 (5th Cir. 1998). ......................................................... 15

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu
  Stainless USA, LLC*, 590 U.S. 432 (2020) .................................. 4, 22

*Greenwood v. Raznick*,
  326 F. App'x 362 (6th Cir. 2009) .................................................... 29

*HCSC-Laundry v. United States*,
  450 U.S. 1 (1981) ............................................................................ 10

*In re A2p SMS Antitrust Litig.*,
  972 F. Supp. 2d 465 (S.D.N.Y. 2013) ............................................. 27

*In re Guardianship of Penn*,
  15 F.3d 292 (3d Cir. 1994) ............................................................... 9

*Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*,
  631 F.3d 1133 (9th Cir. 2011); ......................................................... 4

*Intermune, Inc. v. Harkonen*,
  No. 2021-0694, 2023 Del. Ch. LEXIS 108 (Del. Ch. May 10, 2023) .... 16

*Invista S.A.R.L. v. Rhodia, S.A.*,
  625 F.3d 75 (3d Cir. 2010) ............................................................. 24

*Karish v. SI Int'l, Inc.*,
  No. CIV. A. 19501, 2002 WL 1402303 (Del. Ch. June 24, 2002) ......... 23

*Lejano v. K.S. Bandak*,
No. 00-2990, 2004 U.S. Dist. LEXIS 27341
(E.D. La. May 27, 2004) ........................................................ 10

*McPheeters v. McGinn, Smith & Co.*,
953 F.2d 771 (2d Cir. 1992) ............................................... 22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*,
460 U.S. 1 (1983) ................................................................. 7

*Nitro-Lift Techs., L.L.C. v. Howard*,
568 U.S. 17 (2012) ............................................................... 9

*O'Neill v. Brannigan*,
54 F. App'x 69 (3d Cir. 2002) ........................................... 16

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
902 F.3d 1316 (11th Cir. 2018) ........................................... 4

*Powerex Corp. v. Reliant Energy Servs.*,
551 U.S. 224 (2007) ........................................................... 17

*Powers v. Southland Corp.*,
4 F.3d 223 (3d Cir. 1993). ................................................ 15

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945) ........................................................... 29

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ................................................ 8, 11, 23

*Reg'l Rail Reorganization Act Cases*,
419 U.S. 102 (1974) ........................................................... 11

*Reid v. Doe Run Res. Corp.*,
701 F.3d 840 (8th Cir. 2012) ............................................... 4

*Scheiber v. Dolby Labs., Inc.*,
    293 F.3d 1014 (7th Cir. 2002) ............................................................29

*Seller Agency Counsel, Inc. v. Kennedy Ctr. for Real Estate*
    *Educ., Inc.*, 621 F.3d 981 (9th Cir. 2010) ...........................................29

*Suter v. Munich Reinsurance Co.*,
    223 F.3d 150 (3d Cir. 2000) .................................................................4

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) .................................................................20

*United States v. Miller*,
    527 F.3d 54 (3d Cir. 2008) ...................................................................8

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009)................................................................................9

*Wu v. Liu*,
    131 F.4th 1295 (11th Cir. 2025) ...................................................12, 13

**Statutes**

9 U.S.C. § 4 ......................................................................................6, 8, 11

9 U.S.C. § 16 ..........................................................................................*passim*

9 U.S.C. § 202 .............................................................................................3

9 U.S.C. § 205 ........................................................................................*passim*

9 U.S.C. § 206 ....................................................................................10, 12

28 U.S.C. § 1441 .....................................................................................17

28 U.S.C. § 1442 ................................................................................12, 17

28 U.S.C. § 1446 ..................................................................................9, 10

28 U.S.C. § 1447 ............................................................ *passim*

Pub. L. No. 100-702, 102 Stat. 4642 (Nov. 19, 1988)...........................10

Pub. L. No. 80-773, 62 Stat. 939 (June 25, 1948)................................10

## Constitutional Provisions

U.S. Const., Art. VI, cl. 2 ........................................................9

# INTRODUCTION

Sidestepping the arguments the Notarc Parties[1] raised in their brief, LPS HK devotes half its brief to arguing, once more, that this Court lacks jurisdiction to hear this appeal. When LPS HK does turn to the merits, it bases its arguments on purported "facts" that are, in truth, merely *allegations* from its Complaint. But sworn affidavits in the Shareholder Litigation pending in Barbados—which LPS HK attached to its Complaint here—paint a very unflattering version of LPS HK's "facts." That testimony confirms that the "conspiracy" at the heart of LPS HK's claims is a work of fiction.

Ironically, LPS HK seeks equitable relief in this case after resorting to *kidnapping and torturing* LHI's director, Tingyun Han, so she would recant her testimony in the Barbados Shareholder Litigation. Ms. Han's own testimony (attached to the Complaint) explains her torture at LPS HK's hands in the People's Republic of China. Now, LPS HK asks this Court to ignore its actions, undercut the Notarc Parties' contractual right to arbitrate with LHI in Panama, and allow LPS HK to derivatively

---

[1] This brief adopts the defined terms and their meanings included in the Notarc Parties' Initial Brief [ECF No. 32].

assert non-party LHI's claims while circumventing the obligation to arbitrate that comes with stepping into LHI's shoes.

The district court erred because, among other reasons, it did not limit its determination of arbitrability to the claims the Notarc Parties sought to arbitrate. Instead, the court assessed claims outside the scope of the Motion to Compel Arbitration and concluded the entire Complaint was not arbitrable. Rather than confront this error head-on or defend it, LPS HK attempts to shift the blame to the Notarc Parties. It claims that "Appellants invited any such error," which presupposes error. [LPS HK Br. 42]. Because LPS HK concedes the district court erred, and for the reasons the Notarc Parties set forth in their Initial Brief and below, this Court should reverse the district court's denial of the Motion to Compel Arbitration.

## **ARGUMENT**

The Court should find it has jurisdiction over this appeal, reverse the district court's order denying the Notarc Parties' Motion to Compel Arbitration, and remand the case to the district court to order arbitration of LPS HK's derivative claims.

## I.    This Court Has Jurisdiction to Hear This Appeal.

This Court is vested with jurisdiction over this appeal pursuant to the language of an international treaty and Congress's express statutory intent. A contrary conclusion would infringe on Congress's right to regulate interstate commerce and international commercial relationships, upset this Court's precedent, and conflict with decisions of the Supreme Court and this Court's sister circuits.

### a. The Notarc Parties Properly Removed to Federal Court.

Characterized as "one of the broadest removal provisions . . . in the statute books," *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 377 (5th Cir. 2006), the New York Convention's removal provision establishes that a defendant may remove a case to federal court "at any time before trial" so long as the action's "subject matter relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. In turn, an arbitration agreement is deemed to be "falling under the Convention" if it "aris[es] out of a legal relationship, whether contractual or not, which is considered commercial." *Id.* § 202. Lastly, an arbitration agreement "relates to" an action's subject matter "whenever it could conceivably affect the outcome of the plaintiff's suit." *Infuturia Glob. Ltd.*

*v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1135 (9th Cir. 2011); *accord Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2022); *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323–24 (11th Cir. 2018), *rev'd and remanded on other grounds sub nom. GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 843–44 (8th Cir. 2012).

Courts liberally construe § 205's already broad language. Indeed, "absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." *Beiser*, 284 F.3d at 671–72; *see also Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 158–59 (3d Cir. 2000) (determining this Court has appellate jurisdiction to review a remand order pursuant to § 205, reversing the order, and remanding case for consideration of a motion to compel arbitration).

The face of LPS HK's Complaint and the Notarc Parties' removal petition both establish that the action's "subject matter relates to an arbitration agreement or award falling under the Convention." 9 U.S.C.

§ 205. The Court should therefore conclude that the Notarc Parties properly removed the case to federal court.

### i. LPS HK's Complaint

LPS HK's Complaint arises from a transaction "effectuated through" the Share Subscription Agreement, which LPS HK concedes "contains an arbitration agreement." [Appx-II 243 ¶¶ 217–18]. LPS HK alleges that the Panama Project Companies issued "new Class B shares (with voting rights)" to one of the Notarc Parties through the Share Subscription Agreement, and that the transaction affects LPS HK's purported rights as a shareholder of LHI. [Appx-II 243 ¶¶ 217–18]. LPS HK asserts claims for preliminary and permanent injunctive relief against all defendants, seeking to enjoin the so-called "sham arbitration" pending in Panama. [Appx-II 293–96 ¶¶ 395–409] (emphasis removed). By its own allegations, LPS HK's Complaint has a "subject matter [that] relates to an arbitration agreement or award falling under the Convention," 9 U.S.C. § 205. Thus, the Notarc Parties' removal to federal court was proper.

### ii. The Notarc Parties' removal petition

In their removal petition, the Notarc Parties demonstrate that the

arbitration and LPS HK's claims concern a common group of commercial "contracts signed in Panama, governed by Panamanian law, with performance contemplated in Panama, and for a project on the mouth of the Panama Canal." [Appx-II 165 ¶¶ 19–20]. The Notarc Parties also note that the Share Subscription Agreement (and the arbitration agreement within it) at the center of LPS HK's claims is one of the contracts pertinent to the arbitration underway in Panama. [Appx-II 165 ¶¶ 19–20]. Accordingly, the Court should find the Notarc Parties' removal petition easily satisfies the New York Convention's famously broad removal provision.

### b. *The FAA Does Not Condition Judicial Remedies or Appellate Rights Based on Whether a Plaintiff or Defendant Invokes Its Provisions.*

Under LPS HK's proposed construction of the FAA, a *defendant* removing a case to federal court under § 205 of the New York Convention neither has a remedy under § 4 of the FAA nor a right to an appeal under § 16 of the FAA if the district court (1) denies arbitration, (2) directs litigation to proceed, and (3) remands the case to state court in a single order. On the other hand, LPS HK's proposed construction provides a *plaintiff* seeking to compel arbitration with an entirely different and

more expansive set of rights under the FAA. Specifically, a plaintiff would have a right to appeal the arbitration denial under § 16 of the FAA if (1) a plaintiff files a petition for arbitration in federal court under § 4 of the FAA and the New York Convention, and (2) the district court denies arbitration—even if a court later determines jurisdiction did not exist under the New York Convention. Thus, LPS HK's proposed procedure affords a defendant fewer rights than a plaintiff seeking the same relief.

LPS HK ignores the plain language of § 205 to argue that 28 U.S.C. § 1447(d) bars this appeal because the district court both remanded the case and denied the Notarc Parties' Motion to Compel Arbitration. But the plain language of § 205 provides: "For the purposes of Chapter 1 of this title, any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed." 9 U.S.C. § 205.

Section 205 is consistent with Congress's aim to establish a uniform body of *federal* law for the *federal* courts to apply when deciding whether to enforce an arbitration agreement pursuant to the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24 (1983); *see also Prima Paint Corp. v. Flood*

*& Conklin Mfg. Co.*, 388 U.S. 395, 405–06 (1967) (setting forth legislative history of FAA). Congress plainly intended that a *defendant* removing a case to federal court under the New York Convention would have all the rights afforded to a *plaintiff* filing an original action invoking § 205, including the right to compel arbitration and the right to appeal. LPS HK glosses over § 205 in its brief and urges the Court to focus on § 1447(d), but § 205 must be given effect. *United States v. Miller*, 527 F.3d 54, 62–63 (3d Cir. 2008) ("legislative enactments should not be construed to render their provisions mere surplusage") (quoting *Dunn v. Commodities Futures Trading Comm'n,* 519 U.S. 465, 472 (1997)); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) ("It is this Court's duty to interpret Congress's statutes as a harmonious whole rather than at war with one another.").

The Notarc Parties removed to federal court under § 205 and, having done so, the case "shall be deemed" as though initiated in a federal district court and subsequently appealed pursuant to Chapter 1 of the FAA. *See* 9 U.S.C. §§ 4, 16, 205. Accordingly, § 1447(d)'s prohibition on appeals taken from remand orders is not pertinent to, and certainly does not preclude, this appeal.

*c. The Court May Read the FAA Harmoniously With, Yet Substantively Supreme Over, Procedural Statutes.*

Although the plain language of § 205 compels appellate jurisdiction, harmonizing § 205 and § 1447 results in the same conclusion. Congress enacted the FAA pursuant to its authority under the Commerce Clause of the U.S. Constitution, and adopted the New York Convention, an international treaty, as federal law. *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21–22 (2012) (describing the FAA and "opinions of [the Supreme] Court interpreting that law" as "'the supreme Law of the Land'") (internal citation omitted) (quoting U.S. Const., Art. VI, cl. 2). Accordingly, the FAA enjoys "substantive supremacy," *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009), over procedural statutes governing remands and removals, such as 28 U.S.C. §§ 1446 and 1447.

As procedural statutes, §§ 1446 and 1447's subject matter is not "closely related" to any provision of the FAA. As such, the Court should not find any conflict between the plain text of §§ 1446 and 1447 and the FAA. *Cf. In re Guardianship of Penn,* 15 F.3d 292, 294 (3d Cir. 1994) (statutes with "closely related" subject matter should be "construed so as not to make the other meaningless, particularly in areas of general and special legislation") (citation omitted).

9

Section 16(a)(1)(C) provides a narrow judicial remedy, in that it authorizes appeals of orders denying a motion to compel arbitration brought under § 206 of the New York Convention. *See* 9 U.S.C. § 16(a)(1)(C) (referring to *id.* § 206). In contrast, §§ 1446 and 1447 set forth the general procedures for removing civil actions to federal court and remanding civil actions to state court, respectively. *See generally* 28 U.S.C. §§ 1446–47; *cf.* [LPS HK Br. 20–21] (relying on *Dahiya v. Talmidge Int'l Ltd.*, 371 F.3d 207, 207 (5th Cir. 2004)); *but see Lejano v. K.S. Bandak*, No. 00-2990, 2004 U.S. Dist. LEXIS 27341, at *3 n.1 (E.D. La. May 27, 2004) (Feldman, J.) (district court that decided *Dahiya* describing its ruling as "incorrect" and lamenting it "lacks jurisdiction to vacate" it). Accordingly, if the Court determines it cannot read § 16(a)(1)(C) and § 1447(d) harmoniously, it should enforce the more specific (and newer)[2] § 16 over the more general (and older)[3] § 1447, and conclude it has jurisdiction to review this case. *See HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) (implementing the "basic principle of statutory construction" that statutes relating to the same subject matter

---

[2] *See* Pub. L. No. 100-702, 102 Stat. 4642 (Nov. 19, 1988).

[3] *See* Pub. L. No. 80-773, 62 Stat. 939 (June 25, 1948).

should be construed harmoniously if possible but, if not, the more recent or specific statute should prevail over an older or more general one); *see also Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 133–34 (1974).

### i. The FAA undermines LPS HK's argument that a party must win the race to the courthouse to preserve its appellate rights

The rights provided by § 4 of the FAA do not depend on which party wins the race to the courthouse. *See* 9 U.S.C. § 4 (providing a federal judicial remedy for persons "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration"). To the contrary, § 4 "provides a federal remedy for a party 'aggrieved'" who seeks to compel arbitration, irrespective of whether that "aggrieved" party is a plaintiff or defendant. *Prima Paint*, 388 U.S. at 400 (quoting 9 U.S.C. § 4). As the Supreme Court reasoned, "it is inconceivable that Congress intended the rule [set forth in § 4] to differ depending upon which party [subject] to the arbitration agreement first invokes the assistance of a federal court" and becomes a plaintiff as a result, rather than a defendant. *Id.* at 404.

Likewise, the plain language of the FAA grants federal appellate rights that do not discriminate along party lines. For example, § 16(a)(1)

applies evenly to orders denying a plaintiff's petition to compel arbitration and an order denying a defendant's motion to compel arbitration under § 206 of the New York Convention, such as in this case. *Compare id.* § 16(a)(1)(B) with *id.* § 16(a)(1)(C).

LPS HK elevates form over substance to argue that a party loses its right to appeal an order denying a motion to compel arbitration where the issuing court also granted a motion for remand.[4] *See generally* [LPS HK Br. § I(a)]. But § 16(a)(1)(C) does not exclude from its scope an order that denies a motion to compel arbitration and encompasses an additional ruling. *See* 9 U.S.C. § 16(a)(1)(C); *see also BP P.L.C. v. Mayor of Balt.*, 593 U.S. 230, 237–38 (2021) (a statute authorizing federal appellate review of an order rejecting removal under 28 U.S.C. § 1442 applies even if such orders include an otherwise unappealable remand ruling because "the whole of [the] order [is] reviewable on appeal," not merely "some of its parts or pieces").

In an attempt to rewrite § 16 of the FAA, LPS HK asks this Court to repeat the error in *Wu v. Liu*, 131 F.4th 1295 (11th Cir. 2025)*,* which

---

[4] For the avoidance of doubt, the Notarc Parties do not argue that the district court committed error by ruling on two motions in a single order.

construed § 1447(d) as displacing the FAA. Under *Wu*, a district court could circumvent § 16's grant of appellate rights over orders denying a removal defendant's motion to compel arbitration under the New York Convention simply by combining a denial of a motion to compel arbitration with the remand of the proceedings. *See* 131 F.4th at 1300. But even *Wu* concedes that § 1447(d) only applies "**[a]bsent a clear statutory command to the contrary.**" *Id.* at 1299 (citation omitted) (emphasis added). The *Wu* court overlooked, or was not presented with, § 205's "clear statutory command" that removed cases shall be deemed filed in district court originally pursuant to Chapter 1 of the FAA, and that Chapter 1 authorizes appeals from orders denying arbitration. *See* 9 U.S.C. §§ 16, 205. That oversight alone renders *Wu* unpersuasive.

The flaw in *Wu* is further exposed by a simple hypothetical scenario. On one hand, a standalone order denying a motion to compel may be appealed immediately, and such an appeal divests the district court of jurisdiction and precludes it from remanding the case to state court. *See Coinbase, Inc. v. Bielski,* 599 U.S. 736, 736 (2023) (finding a district court must stay its proceedings during an interlocutory appeal on the question of arbitrability). On the other hand, under *Wu*, an order that both denies

a motion to compel and remands the case is non-appealable, notwithstanding § 16's grant of appellate rights. Under this framework, courts would be forced to apply the law unequally to different parties, solely dependent on who won the race to the courthouse.

Ultimately, LPS HK seeks the result Congress sought to avoid by requiring removed cases to be treated as though originally filed in federal court. If LPS HK's position is adopted, parties seeking to arbitrate pursuant to the New York Convention would preemptively file petitions for arbitration in federal courts simply to preserve their appellate rights. Such an interpretation would clog the courts with unnecessary litigation, strain limited judicial resources, delay and multiply arbitration proceedings, and frustrate, if not defeat, Congress's intention in adopting the New York Convention and enacting the FAA. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (the legislative aim of the FAA is to encourage an "efficient and speedy dispute resolution"). Adherence to Congress's intent, as set forth in the plain language of § 205, would prevent those harms.

ii.    The *Waco* doctrine permits appellate review

Even setting aside § 16's express grant of appellate rights over

orders denying motions to compel arbitration and § 205's carve-out from the scope of § 1447(d), this Court's jurisdiction is also supported by the *Waco* doctrine. Under *City of Waco v. U.S. Fidelity & Guaranty Insurance Co.*, 293 U.S. 140, 142–44 (1934), an order may be reviewed on appeal if: (a) it is "separable" from a remand order (both "in logic and in fact"); and (b) will be "conclusive upon the petitioner" unless "reversed or set aside." An order is "separable in logic and in fact" when the issue adjudicated therein "has independent relevance in adjudging the rights of the parties (*i.e.*, relevance beyond determining the existence of federal subject matter jurisdiction)." *Powers v. Southland Corp.*, 4 F.3d 223, 228 (3d Cir. 1993). A ruling is "conclusive" if it "will have the preclusive effect of being functionally unreviewable in state court." *First Nat'l Bank v. Genina Marine Servs.*, 136 F.3d 391, 394 (5th Cir. 1998).

This Court's review of the order is appropriate under *Waco*. First, the remand ruling is "separable" because the district court's order does more than determine federal subject matter jurisdiction, including by determining the parties' rights. For example, the order determines the Notarc Parties cannot enforce contracts underlying the disputed Notarc Transaction against LPS HK. *See* [Appx-I 5–8]. In addition, the order

deems all of LPS HK's claims to be direct claims, rather than a mix of direct and derivative claims. *See* [Appx-I 5–8]; *cf. Dahiya*, 371 F.3d at 210, *rev'd on remand*, 931 So. 2d 1163 (La. Ct. App. 2006) (district court's finding that it lacked jurisdiction was based on determination that no arbitration agreement existed); *O'Neill v. Brannigan*, 54 F. App'x 69, 72 (3d Cir. 2002) (unpublished) (where district court's order was made "for the purpose of determining subject matter jurisdiction" under the ERISA statute, "the issue is not separable") (internal quotation omitted).

In addition, the ruling is "conclusive." A Delaware state court could consider the district court's determination that this dispute, in its entirety, is non-arbitrable as a full and final adjudication on the arbitrability question. *See generally Intermune, Inc. v. Harkonen*, No. 2021-0694, 2023 Del. Ch. LEXIS 108, at *38 (Del. Ch. May 10, 2023) (providing overview of cases and treatises discussing issue preclusion). Because the order determines that *all* of LPS HK's claims are non-arbitrable, it could preclude a state court from determining whether LPS HK's derivative claims should be resolved by arbitration.

iii.   LPS HK's argument lacks supporting legal authority

The other cases LPS HK relies on are distinguishable and thus

16

unhelpful to the Court. *Powerex Corp. v. Reliant Energy Services*, 551 U.S. 224, 227–28 (2007), *cited in* [LPS HK Br. 17], addresses removal petitions filed by "foreign states" under the Foreign Sovereign Immunities Act of 1976 and by federal agencies under 28 U.S.C. §§ 1441 and 1442. Similarly, *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638–41 (2009), *cited in* [LPS HK Br. 17], addresses supplemental jurisdiction over state law claims. Neither case addresses issues pertinent here.

Lastly, this Court's unpublished order in *Bank of New York Mellon Trust Co., N.A. v. Cresci,* No. 18-1850, 2018 WL 11211439, at *1–2 (3d Cir. Oct. 26, 2018) (unpublished), *cited in* [LPS HK Br. 18], consists of two sentences, excluding citations to *Powerex* (the sole case cited) and § 1447. That case does not address the FAA and thus is not instructive.

## II.  LPS HK's Derivative Claims Should Be Compelled to Arbitration.

Not having any direct right to enjoin the Panama Canal Project, halt the Panama Arbitration, or obtain declaratory relief about the Notarc Transaction, LPS HK instead asserts derivative claims that must be compelled to arbitration. While LPS HK's Complaint alleges both direct and derivative claims, Counts 10 through 12 allege claims that

belong to non-party LHI—in which LPS HK claims to own a 51% interest—and are subject to the broad arbitration agreement in the Share Subscription Agreement between Notarc Port, LHI, and others.

### a. A Close Reading of the Complaint Illustrates LPS HK's Claims are Derivative and Subject to Arbitration.

LPS HK claims that Counts 10 through 12 are direct claims, and not derivative, because they relate to "harm to Landbridge caused by Appellants, not harm to LHI." [LPS HK Br. 34]. However, the plain language of LPS HK's Complaint belies this argument. It is undisputed that LPS HK <u>never</u> held a direct interest in the Panama Project Companies or the Panama Canal Project. Rather, LPS HK held an interest in <u>LHI</u> and LHI, in turn, had an interest in the Panama Project Companies holding the property and concession rights for the Panama Canal Project.

In Count 10, LPS HK seeks a declaratory judgment that the transaction between LHI, Notarc Port, and Coastal Trust was not a legal, bona fide transaction. LPS HK argues that Count 10 is a direct claim "because it furthers Appellants' scheme to divest [LPS HK] of its property interests." [LPS HK Br. 34]. But only LHI can bring a claim to "settle the dispute as to the ownership of the Panama Project Companies and the

Panama [Canal] Project" because LHI, and not LPS HK, held the ownership interest. [Appx-II 289 ¶ 381]. By asserting rights belonging to LHI (as the prior owner of the Panama Project Companies), LPS HK asserts clearly derivative claims.

In Count 11, LPS HK seeks a preliminary and permanent injunction over the Panama Canal Project. [Appx-II 290–96]. LPS HK misleadingly contends an injunction is necessary because it "paid a substantial amount to become a majority owner of the Panama Project Companies and the Panama [Canal] Project" and "was wrongfully and illegally deprived of its majority interest in the Panama Project Companies and the Panama [Canal] Project[.]" [Appx-II 292–93] (emphasis added). But, again, LPS HK has never been the majority owner of the Panama Project Companies or the Panama Canal Project— unquestionably, LHI was the majority shareholder prior to the Notarc Transaction. Because LPS HK's factual assertions are false, its conclusion is also faulty. Any rights to the Panama Canal Project would belong to LHI, so LPS HK may only assert derivative claims.

Likewise, in Count 12, LPS HK seeks to enjoin the pending Panama Arbitration the Notarc Parties brought against LHI and others. LPS HK

alleges that the Notarc Parties are "forc[ing] [it] to submit to a Sham Arbitration to which [LPS HK] has never agreed and in which [LPS HK] could never obtain any form of justice." [Appx-II 295 ¶ 408]. But Count 12 does not seek to protect LPS HK; rather, Count 12 seeks to stop the entire arbitration proceeding and deny the Notarc Parties (and LHI) from enjoying their contractual rights. By resisting LHI's participation in the arbitration, LPS HK is exercising derivative rights it may only claim as a purported shareholder of LHI.

Under Delaware law, the question is: "Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004). Here, there is only one possible answer: the claims belong to the corporation, LHI. Only LHI could possibly have been harmed in Counts 10 through 12 because LPS HK never had the direct interest in the Panama Project Companies that it alleges was affected. Such claims affect all shareholders, so they cannot be brought as direct claims. If LPS HK seeks to assert derivative claims on behalf of LHI, it should likewise be bound to arbitrate pursuant to LHI's arbitration agreement.

Appellee now argues that the Notarc Parties have "invited error" because they "failed to identify which claims they believed were derivative." [LPS HK Br. 33]. Facially, that is an acknowledgement that the district court erred in conflating the causes of action. The Notarc Parties have always clearly identified that "[a]ny party asserting claims based on an alleged interest in LHI should be compelled to arbitrate those claims, just as it would if it had brought them as a derivative suit. [Appx-II 109–10]. As the Notarc Parties state in their Brief in support of the Motion to Compel Arbitration: "LPS HK purports to assert rights on behalf of LHI (as its alleged majority shareholder) with respect to the Panama [Canal] Project by challenging the acts of LHI regarding the sale of the Panama Project Companies. LHI is bound to arbitrat[e] those claims." [Appx-II 110] (emphasis added). The Notarc Parties precisely describe the relief sought in Counts 10 through 12 of the Complaint in their Motion to Compel Arbitration. No further specificity is required.

Obviously, if LHI, as the arbitration respondent, had challenged the arbitration in the district court, LHI would be compelled to arbitrate. The result should be the same for LPS HK, which seeks to assert LHI's rights derivatively. If this Court were to find otherwise, it would expand

standing for shareholder derivative suits by allowing a shareholder to bypass derivative standing requirements to directly sue a counterparty to the contract. This is contrary to well-established principles of derivative standing.

### b. LPS HK Should Be Compelled to Arbitrate Its Derivative Claims Even as a Non-Party to the Share Subscription Agreement.

LPS HK claims that the inquiry about whether it is bound by the arbitration agreement rests solely on whether it is a party to the arbitration agreement. [LPS HK Br. 26] ("Because [LPS HK] is not a Party, the inquiry ends.") (citing *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 773–74 (2d Cir. 1992)). That is incorrect as a matter of law. *See GE Energy*, 590 U.S. at 436 (reversing and remanding Eleventh Circuit decision finding parties must sign an arbitration agreement to compel arbitration).

LPS HK also takes the absurd position that its efforts to void an arbitration agreement are not "related to" that arbitration agreement. [LPS HK Br. 27]. Applying circular logic, LPS HK argues that Share Subscription Agreement is not "related to" an arbitration agreement because courts should avoid "interpretations that advance illegal ends."

[LPS HK Br. 27] (citing *Doyle v. U.S. Sec'y of Lab.*, 285 F.3d 243, 251 (3d Cir. 2002)). That fanciful legal conclusion is misplaced because the only questions at this stage are arbitrability and whether a court or an arbitrator should make that determination. The Supreme Court decided that question for this case, finding that claims of fraud in the inducement of a contract—unless directed at the arbitration clause itself—should be adjudicated by arbitrators. *Prima Paint*, 388 U.S. at 400; *see also Karish v. SI Int'l, Inc.*, No. CIV. A. 19501, 2002 WL 1402303, at *4 (Del. Ch. June 24, 2002).

The Third Circuit likewise has recognized that "arising under" language in arbitration clauses encompasses disputes concerning contract formation, including fraudulent inducement. *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000). Because LPS HK does not challenge the arbitration clause directly but, rather, alleges the entire agreement is fraudulent, the arbitrators should determine the dispute. *See id.* at 727; *Karish*, 2002 WL 1402303, at *4.

### III.   LPS HK Should Be Bound to Arbitrate Under the Doctrine of Equitable Estoppel.

LPS HK's claims arising out of the arbitration agreement should be compelled to arbitration under the doctrine of equitable estoppel.

Appellee concedes that estoppel is a recognized theory for binding non-signatories to arbitration agreements. [LPS HK Br. 29] (quoting *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010)). LPS HK, as LHI's purported shareholder, should not be allowed to step into LHI's shoes, assert derivative claims that fall under the arbitration provision of the Share Subscription Agreement, and then disavow the arbitration provision of that agreement. That result is exactly what the doctrine of equitable estoppel prevents.

      a. *Appellee Cannot Obtain Benefits Under the Share Subscription Agreement While Disavowing its Arbitration Clause.*

LPS HK argues that equitable estoppel does not apply because it does not receive a benefit from the Share Subscription Agreement, but that argument is based on LPS HK's purposeful mischaracterization of its interests in the Panama Canal Project and the Panama Project Companies. In the Complaint, LPS HK concedes it never held a direct interest in the Panama Project Companies. [Appx-II 182 ¶ 34] (alleging LPS HK was a "majority owner" of LHI and that LHI "wholly owns the Panama Project Companies and their rights in the Panama [Canal] Project"). Nonetheless, it alleges it was "deprived of its majority interest

in the Panama Project Companies and the Panama [Canal] Project[.]" [Appx-II 292–93]. At most, however, LPS HK purportedly held 51% of <u>LHI's</u> shares. *Id*. This discrepancy between LPS HK's allegations and its arguments concerning direct and indirect ownership interests are fatal.

There is no dispute that LHI received a benefit from the Share Subscription Agreement. As a direct result of that Share Subscription Agreement, the Notarc Parties avoided termination of the PCCP Concession. *See* [Appx-II 207 ¶ 107] (Panama Maritime Authority "ceased the process to revoke PCCP's Concession.").[5] LHI was in breach of its contractual obligations and about to lose its rights to the Panama Canal Project. [Appx-II 60–61 ¶¶ 6–9]. Through the Share Subscription Agreement, LHI and its subsidiaries dodged losing the floundering concession and any liability for LHI's breach.

LPS HK acknowledges that nonparty LHI received a benefit under the contract. *See* [LPS HK Br. 34–35] (arguing claims are not derivative because Appellants "injure [LPS HK] by usurping its rights even if their <u>decisions benefit LHI</u>.") (emphasis added). Thus, if the Barbados court

---

[5] Notably, LPS HK does not allege it did anything as a purported shareholder to ensure that LHI and its subsidiaries performed under the concession or took any affirmative step to avoid that result.

finds for LPS HK, it will be entitled to the same benefits as every other shareholder in LHI. LPS HK only benefitted (or was harmed) from the Share Subscription Agreement as a purported shareholder in LHI. [Appx-II 62–64].

LPS HK argues that the Notarc Parties are "required by law" to identify a benefit that flows directly from one or more contractual provisions. [LPS HK Br. 31]. Simple: the Notarc Parties saved the Panama Canal Project, stopped termination proceedings for the PCCP Concession, extended the concession, and made the Panama Canal Project more valuable, all of which directly benefited LHI and, therefore, its shareholders. [Appx-II 62–64, 423]. LPS HK now seeks to obtain these benefits, as LHI's shareholder, while disavowing and attacking the Share Subscription Agreement with LHI that made the benefits possible. This is a classic example of wanting to have one's cake and eat it too.

### b. The Doctrine of Unclean Hands Does Not Save Appellee's Claims from Arbitration.

In a last-ditch effort, LPS HK argues that the unclean hands doctrine bars the Notarc Parties from asserting estoppel. The doctrine of unclean hands is an "ancient maxim" but it "is not absolute" and "will not be applied where an inequitable result would be reached." *In re A2p SMS*

*Antitrust Litig.*, 972 F. Supp. 2d 465, 480 (S.D.N.Y. 2013) (cleaned up). Rather, the doctrine "only bars enforcement of an arbitration agreement under equitable estoppel 'if the unclean hands relate to the arbitration agreement itself, not to the merits of the underlying dispute.'" *Catz v. Precision Glob. Consulting*, No. 19 Civ. 7499, 2021 WL 1600097, at *39 (S.D.N.Y. Apr. 23, 2021) (quoting *In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d at 480)).

LPS HK's arguments fail because they are directed at the Share Subscription Agreement as a whole, not the arbitration provision specifically. *See generally* [Appx-II 284–289]. For the doctrine to apply to bar arbitration, the "misconduct allegedly giving rise to the unclean hands must also 'relate directly' to the 'making' of th[at] agreement.'" *In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d at 481 (citations omitted).

Moreover, applying the doctrine broadly in the arbitration context as LPS HK desires would yield inequity. Under LPS HK's application, "a plaintiff seeking to avoid being equitably stopped from arbitrating her dispute could rely on nothing more than the allegations in her complaint," but a defendant would be "preclude[d] . . . from ever compelling such arbitration on equitable grounds." *Id.* at 483. LPS HK's

allegations cannot preclude estoppel from binding LPS HK to arbitration despite its status as a non-signatory to the Share Subscription Agreement.

The unclean hands doctrine may only properly apply against LPS HK, not the Notarc Parties. Although LPS HK asserts numerous equitable claims, the sworn statements attached to the Complaint demonstrate LPS HK does not come to court with clean hands. In one such sworn statement, for example, Ms. Han avers that LPS HK's principal, Chairman Ye, was "taking advantage" of the death of LHI's former shareholder and owner, Chairman Gao, in that Chairman Gao was no longer alive and able to contradict Chairman Ye. [Appx-III 741 ¶ 27; Appx-II 192 ¶ 58]. Ms. Han further testified that during her visit to the People's Republic of China, police from Chairman Ye's hometown abducted, "physically tortured," and "threatened" her; "forced [her] to state some facts relating to the share transfer; and sought to coerce [her] to alter the affidavit [she] filed in [the Shareholder Litigation], so as to assist Chairman Ye in succeeding on behalf of [LPS HK]." [Appx-III 743–45 ¶¶ 33–39]. Simply stated, in this case, the doctrine of unclean hands may be applied only to bar LPS HK from obtaining equitable relief.

Finally, LPS HK's arguments are unsupported because none of the cases LPS HK cites involve an arbitration agreement (and most of them arise in the intellectual property context, which is not at issue here). *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 819 (1945) (analyzing unclean hands defense in patent case); *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002) (same); *Seller Agency Counsel, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981 (9th Cir. 2010) (analyzing unclean hands defense in trademark case). These cases are inapplicable.

The only other case LPS HK cites, *Greenwood v. Raznick*, 326 F. App'x 362, 369 (6th Cir. 2009), does not involve an arbitration agreement either. There, the circuit court ordered the district court to consider the unclean hands doctrine on remand because it "did not explain its rejection" in the summary judgment order appealed. *Id.* at 369. Accordingly, *Greenwood* is not instructive here.

## IV. LPS HK's Position is Contrary to Public Policy and the Intent Behind the New York Convention.

LPS HK asks this Court to adopt a rule that would allow non-parties to international contracts (such as itself) to directly attack those contracts and the rights of contracting parties (such as the Notarc Parties

and LHI) to avoid arbitration clauses in their contracts, while eliminating the statutory right to appeal an arbitration denial. That result would undermine the purpose and intent of the New York Convention, the FAA, and long-standing principles of comity. If the Court approves of LPS HK's position, a purported shareholder could seek to enjoin a foreign arbitration involving a corporation simply by filing a complaint asserting an interest in the corporation, without assuming any of the corporation's obligations under the corporation's arbitration agreement and without intervening in the arbitration.

This would create an immense loophole through which any party could sidestep the New York Convention and the FAA any time a shareholder, affiliate, or related party files suit to challenge another's right to arbitrate. The opportunities for mischief and end-runs around the established rules governing international arbitration are almost endless. Moreover, according to LPS HK, such acts would not be reviewable on appeal, which would further undermine the rights afforded to parties under 9 U.S.C. § 16.

Certainly, if LHI, as the respondent in that arbitration, raised these issues in litigation, a court would compel LHI to submit the claims to

arbitration. In its Complaint, LPS HK elected to step into the shoes of LHI, which placed it squarely within the scope of the New York Convention and the FAA. Having so chosen, LPS HK should be bound by the obligations as well as the rights associated with such a derivative claim.

## CONCLUSION

The Court should reverse the district court's denial of the Notarc Parties' Motion to Compel Arbitration and remand this action with instructions compelling arbitration of LPS HK's claims for injunctive and declaratory relief.

Dated: July 7, 2025             Respectfully submitted,

*/s/ Chad S.C. Stover*
Chad S.C. Stover
Delaware Bar No. 4919
BARNES & THORNBURG LLP
222 Delaware Ave., Ste. 1200
Wilmington, Delaware 19801
Tel.:   (302) 300-3474
Fax:   (302) 300-3456
chad.stover@btlaw.com

John Arrastia, Jr.
Jennifer M. Hernandez
CONTINENTAL PLLC
255 Alhambra Circle, Ste. 640
Coral Gables, Florida 33134
Tel.:    (305) 677-2707
jarrastia@continentalpllc.com
jhernandez@continentalpllc.com

***Counsel for Appellants***

## CERTIFICATION OF ADMISSION TO BAR

I, Chad S.C. Stover, certify as follows:

     1.     I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

     2.     Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 7, 2025

By: /s/ Chad S.C. Stover
Chad S.C. Stover

## CERTIFICATION OF ADMISSION TO BAR

I, John Arrastia, Jr., certify as follows:

     1.     I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

     2.     Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 7, 2025

By: /s/ John Arrastia, Jr.
John Arrastia, Jr.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief contains 6,306 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2019 version of Microsoft Word in 14 point Century Schoolbook font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: July 7, 2025

By: /s/ Chad S.C. Stover
Chad S.C. Stover

## CERTIFICATE OF FILING AND SERVICE

I certify that on this 7th day of July 2025, the foregoing Appellants' Reply Brief were filed through CM/ECF system and served on all parties or their counsel of record through the CM/ECF system.

Dated: July 7, 2025

By: /s/ Chad S.C. Stover
Chad S.C. Stover